CHESAPEAKE SHOE CO. v. SELDNER.

(Circuit Court of Appeals, Fourth Circuit. May 5, 1903.)

No. 474.

1. BANKRUPTCY—ORDERS—PROCEEDINGS FOR REVIEW.

An appeal duly taken from an order in bankruptcy may be treated by the appellate court as a petition for revision, where only a question of law is presented, and the latter is the proper mode of review.

2. SAME—CONDITIONAL SALE—UNRECORDED CONTRACT.

An unrecorded contract of conditional sale, which under Code Va. 1887, c. 109, as amended, is void as to creditors of the vendee who, but for the writing, "would have had title to the property or the right to subject it to their debts," is void as against the vendee's trustee in bankruptcy, even conceding that the statute should be construed as for the benefit of lien creditors only, since the filing of the petition in bankruptcy operates as a sequestration of all the bankrupt's property for the benefit of his general creditors, and places them in the position of attaching creditors.

3. SAME—PROPERTY VESTING IN TRUSTEE.

The provision of Bankr. Act July 1, 1898, § 70a, 30 Stat. 565, c. 541 [U. S. Comp. St. 1901, p. 3451], which vests a trustee with "the title of the bankrupt" to all property which he could have transferred or which might have been levied upon and sold under process against him, includes all property to which the bankrupt had title as between himself and his creditors.

4. SAME—PROPERTY HELD BY MERCHANT ON CONSIGNMENT—VIRGINIA STATUTE.

Under Code Va. 1887, § 2877, which provides that if any person transact business as a trader in his own name (excepting auctioneers and commission merchants) "all the property, stock and choses in action acquired or used in such business shall, as to the creditors of any such person, be liable for the debts of such person," the trustee in bankruptcy of a merchant doing business in his own name takes title to all the stock in his store, including goods held by him on consignment, to which he did not have title as between himself and the consignor.

Appeal from the District Court of the United States for the Eastern District of Virginia, in Bankruptcy.

122 F.—38

Edward R. Baird, Jr., for appellant.

P. A. Agelasto, for appellee.

Before GOFF and SIMONTON, Circuit Judges, and McDOWELL, District Judge.

McDOWELL, District Judge. On July 14, 1902, involuntary proceedings in bankruptcy were commenced by the creditors of one Small, a retail shoe dealer of Norfolk, Va., in the United States District Court for the Eastern District of Virginia, and Small was duly adjudicated a bankrupt. On July 31, 1902, the Chesapeake Shoe Company, wholesale dealers in shoes, filed its petition setting up a claim of ownership to a lot of shoes, invoiced at something over $1,000, which had been in the possession of Small under a contract alleged to be a mere consignment contract, and which the bankrupt court had put into the possession of Seldner as receiver. Upon the filing of this petition, with which were filed as exhibits the contract between the shoe company and Small, and an invoice of the shoes, the matter was referred to the referee. The referee reported adversely to the claim of the shoe company. Exceptions to this report were filed, and on October 21, 1902, the judge of the District Court overruled the exceptions. Within 10 days thereafter the shoe company filed its petition for an appeal from the said order, an assignment of errors, and an appeal bond. On October 31, 1902, the appeal was granted and citation issued, returnable November 25, 1902. The record was filed in this court on November 24, 1902. On January 24, 1903, the shoe company filed here a petition praying that its appeal be treated as a petition for revision under section 24b, Bankr. Act July 1, 1898, 30 Stat. 553, c. 541 [U. S. Comp. St. 1901, p. 3432].

Consideration is first demanded of a motion made in behalf of the trustee and receiver that the appeal be dismissed. The ground of this motion is that the judgment appealed from is not appealable under the terms of the act. We think it unnecessary to discuss the much-disputed question as to meaning of the word "claim" in the third clause of section 25a. See 1 Fed. Stat. Ann. 602, note. The appeal may, on authority and in reason, be treated as a petition for revision, without prejudice to the opposing party. A question of law alone is presented by the appeal. See In re Abraham, 35 C. C. A. 592, 93 Fed. 783; In re Worcester County, 42 C. C. A. 637, 102 Fed. 808; Fisher v. Cushman, 43 C. C. A. 381, 103 Fed. 860, 51 L. R. A. 292; Rodgers v. Ramseur (In re Whitener) 44 C. C. A. 434, 105 Fed. 187, 188; 1 Fed. Stat. Ann., note p. 600.

The contract between the petitioner and Small reads as follows:

"This agreement between the Chesapeake Shoe Company of Baltimore, Md., party of the first part, and John F. Small, of Norfolk, Va., party of the second part, witnesseth:

"First. The party of the first part agrees to consign to the party of the second part a stock of its boots and shoes on the following terms and conditions:

"Second. The party of the second part shall keep the said consigned stock insured in the name of and for the benefit of the said party of the first part, to its full value, and shall forward the policy or policies of such insurance to the party of the first part.

"Third. The said party of the first part shall have the right to examine and inventory said consigned stock whenever it may elect so to do.

"Fourth. The said party of the second part agrees to keep separate and intact all moneys arising from the sales from said consigned stock, and shall render a statement on the Monday of each week, and shall remit with the said statement a check for the invoiced value of such portion of the said consigned stock which has been sold or otherwise disposed of.

"Fifth. It is hereby agreed and expressly understood that the entire compensation of the said party of the second part for its services in connection with the sale of such consigned goods shall be the net difference between the prices obtained from such sales from said stock and the prices as invoiced by the said party of the first part.

"Sixth. The said party of the first part agrees to replenish said consigned stock from time to time as may be deemed necessary or advisable by said party of the first part.

"Seventh. This agreement shall remain in force and effect until July 1st, 1902, or it may be terminated by either party hereto by giving a written notice to that effect thirty days prior to such termination, in which event said party of the second part agrees either to retain and pay cash for said consigned stock or ship same promptly, in good order and condition, freight prepaid, to the party of the first part.

"Eighth. The party of the first part reserves the right, in the event of the termination of this agreement, to reject any and all of such consigned goods as may be in the possession of the party of the second part at the time of the termination of this contract, which may be shop-worn or unsalable.

"In witness whereof the parties hereto have hereunto affixed their hands and seals this 28th day of February, 1902."

The Virginia statutes bearing on this case are as follows:

Section 2462, c. 109, Code 1887, as amended by Acts 1893–94, p. 422, c. 362, reads in part:

"Every sale or contract for the sale of goods or chattels wherein the title is reserved until the same be paid for in whole or in part, or the transfer of title is made to depend on any condition, and possession be delivered to the vendee, shall, in respect to such reservation and condition be void as to creditors of * * * such vendee until such sales or contract be in writing * * * and a memorandum of said writing * * * be docketed," etc.

Section 2472, c. 109, Code 1887, reads in part:

"The words 'creditor' * * * where used in any previous section of this chapter, shall not be restricted to the protection of the creditors of * * * the grantor, but shall extend to and embrace all creditors * * * who, but for the deed or writing would have had title to the property conveyed, or a right to subject it to their debts. * * *"

Section 2877, Code 1887, reads:

"If any person transact business as a trader, with the addition of the words 'factor,' 'agent,' 'and company,' or 'and Co.,' and fail to disclose the name of his principal or partner, by a sign in letters easy to be read, placed conspicuously at the house wherein such business is transacted, and also by a notice published for two weeks in a newspaper (if any) printed in the city, town, or county wherein the same is transacted; or if any person transact such business in his own name, without any such addition; all the property, stock, and choses in action acquired or used in such business shall, as to the creditors of any such person, be liable for the debts of such person. This section shall not apply to a person transacting such business under a license to him as an auctioneer or commission merchant."

The contract between the petitioner and Small was never docketed, and Small did business as a trader in his own name. He was not a licensed auctioneer or commission merchant. All of Small's creditors are unsecured creditors "at large." It was contended in argu-

ment that the contract here does not evidence a sale on condition, but that it is a mere consignment contract, leaving the title to the consigned shoes in the petitioner. We find it unnecessary to construe the contract in this respect, since under either construction the action of the court below in holding that the shoes passed to the trustee was right.

Treating the contract as an unrecorded conditional sale, it was argued that the sections of the Code quoted from chapter 109 do not nullify the condition except as to lien creditors. This contention is founded on the language used in section 2472—"a right to subject it to their debts." The Virginia authorities are not entirely agreed as to this question. 2 Minor, Insts. (3d Ed.) 963 et seq.; McCandlish v. Keen, 13 Grat. 637; Dulaney v. Willis, 95 Va. 609, 29 S. E. 324, 64 Am. St. Rep. 815. But, if it be conceded that the creditors in whose favor the statute makes void the condition in an unrecorded contract are only creditors in a position to subject the property, yet under the bankrupt act the filing of a petition in bankruptcy is in effect an attachment levied in behalf of all the bankrupt's creditors. In International Bank v. Sherman, 101 U. S. 403, 25 L. Ed. 866, decided under the act of March 2, 1867, 14 Stat. 517, c. 176, in which title was asserted in opposition to the assignee to property transferred by the bankrupt after the institution of the bankruptcy proceedings, it was said: "The filing of the petition was a caveat to all the world. It was, in effect, an attachment and injunction." In Mueller v. Nugent, 184 U. S. 14, 22 Sup. Ct. 275, 46 L. Ed. 405, it is said: "It is as true of the present law as it was of that of 1867, that the filing of a petition is a caveat to all the world, and in effect an attachment and injunction." In Fraizer's Case, 9 Am. Bankr. Rep. 21, 117 Fed. 746, it is said:

"The moment the petition is filed the proceeding is in rem. It, in legal effect, sequesters all of his [the bankrupt's] property interests for the benefit of all his creditors, pari passu, as if seized under attachment or a writ of execution. His whole estate passes into custodia legis. Eo instante every creditor of the bankrupt becomes an adversary party in a legal proceeding for the appropriation of the property of the bankrupt, and stands as a creditor seeking the aid of the court of exclusive jurisdiction."

In re Pekin Plow Co., 50 C. C. A. 257, 112 Fed. 308, the contest was between the trustee in bankruptcy, representing creditors at large of the bankrupt, and a petitioner claiming under an unrecorded chattel mortgage. Counsel for the petitioner, contending that the word "creditor" as used in the Nebraska registry statute included only a judgment, execution, or attachment creditor, argued that as the mortgage was valid as between the mortgagor and the mortgagee it was enforceable notwithstanding the institution of the bankruptcy proceedings. The state court had construed the statute as was contended by counsel for the petitioner. The Circuit Court of Appeals said:

"Conceding that such is the true interpretation of the statute in question, it is not apparent how the petitioner is aided thereby. * * * The effect of the institution of such bankruptcy proceeding is to forthwith sequester and appropriate all the property of the bankrupt to the payment of his debts pro rata and equally. * * * By such a proceeding the creditors 'are using

the courts of law and their processes for the collection of their debts,' and the creditors thereby make an effectual seizure of the property of the bankrupt. * * *"

As therefore the trustee is the representative of creditors, who are from the date of filing the petition in bankruptcy, in effect, attaching creditors, and as the Virginia registry statute, at least as to such creditors, makes void the reservation of title in a conditional contract of sale, it follows that the bankrupt had title to the shoes, and that the trustee takes this title, if we consider the contract as a conditional contract of sale, reserving title.

If the contract be considered as one merely of consignment, which did not pass title to Small, as between him and the petitioner, it is argued that the trustee does not get title to the shoes. This contention is based on section 70a, Act July 1, 1898, 30 Stat. 565, c. 541 [U. S. Comp. St. 1901, p. 3451]:

"The trustee * * * shall * * * be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, * * * to * * * property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him."

The Virginia statute (section 2877, supra) does not in express terms declare that the title of goods consigned to a trader doing business in his own name shall be vested in the trader. But its intent is clearly to make such goods the property of the trader quoad his creditors. In Hoge v. Turner, 96 Va. 632, 32 S. E. 291, the Court of Appeals, in stating the object of the Legislature in enacting this statute, said:

"The object was * * * to prevent any * * * evasion of ownership and liability for debts in case of controversy, and to preclude the assertion of secret claims of ownership against creditors of him who has conducted the business, possessed the property, and appeared to be its owner."

Such being the intent of the statute, it is difficult to construe it as having any other effect than that given to the registry statutes. To all intents and purposes, so far as his creditors' rights are concerned, this statute vests in the trader the title to the consigned goods. It precludes the assertion of secret claims of ownership by the consignor. In other words, it avoids the title of the consignor and gives title to the trader. So construed, under the express terms of section 70a, Bankr. Law July 1, 1898, 30 Stat. 565, c. 541 [U. S. Comp. St. 1901, p. 3451], the trustee is entitled to the shoes now in dispute.

Having in view the intent of the Virginia statute, and the evident intent of the bankrupt law, the bankrupt court should not be astute to find in the bankrupt law a means of avoiding the object of the law.

It cannot be denied that the language of section 70a, cl. 5, includes both the property which belongs absolutely to the bankrupt, and also that the title to which is by the various state registry statutes held to be in him quoad his creditors. But it is argued that section 2877 of the Virginia statute is sui generis, not found in the statutes of other states, that its existence was unknown to Congress, and consequently that the case we have here is not within the purview of the act. But we do not find any warrant in the language of the act

for this contention. In the case at bar the shoes could have been transferred by Small, and they could have been levied upon and sold under judicial process against him. In order to maintain the contention of petitioner, it is necessary that we find that Small did not have title to the shoes. As the Virginia statute can only be construed as vesting title in Small, quoad his creditors, this contention must fail.

If the "title of the bankrupt," in section 70a, means title as between him and a consignor or vendor, this section of the act is not only utterly inconsistent with the entire spirit of the law, but the numerous decisions holding that the trustee in bankruptcy takes title to property sold to the bankrupt under unrecorded conditional contracts of sale must be held erroneous. The registry statutes of the states do not invalidate the title of the vendor by such a contract as between him and his vendee, but only as between the vendor and the creditors of the vendee. Quite aside from the violence done to the plain meaning of the words, "title of the bankrupt * * * to property * * * which might have been levied upon and sold under judicial process against him," clause 4 of section 70a would seem to make an end of the contention here set up. The trustee takes "the title of the bankrupt * * * to * * * property transferred by him in fraud of his creditors." If the words "title of the bankrupt" do not mean title as between him and his creditors, the language above quoted is meaningless. As between the bankrupt and his fraudulent grantee, the bankrupt has no title (Spencer v. Duplan Co. [C. C.] 112 Fed. 638), and to give any effect, or even meaning, to clause 4 we must construe the words "title of the bankrupt" as meaning title as between the bankrupt and his creditors.

Affirmed.