GILLASPY *v.* INTERNATIONAL HARVESTER Co. OF AMERICA.

[67 South. 904.]

1. PRINCIPAL AND AGENT. *Undisclosed principal. Rights and liabilities. Bankruptcy. Trustees. Rights.*
Under Code 1906, section 4784, providing that if any person shall transact business as a trader, with addition of the words "agent," "factor" and "company" or like words, and fail to disclose the name of the principals or partner by a sign placed conspicuously at the house where the business is transacted, or if any person shall transact business in his own name without such addition, all property used in such business shall, as to the creditors of the trader, be liable for his debts. Where a hardware company whose place of business bore no sign showing that it was an agent for the manufacturer of gas engines had possession, as agent, of an engine which it was demonstrating in hopes of making a sale, the creditors of such hardware company were entitled to treat such engine as the property of the hardware company as against the manufacturer.

2. BANKRUPTCY. *Trustee. Rights of.*
Under Bankr. Act July 1, 1898, ch. 541, sec. 70, Stat. 565 (U. S. Comp. St. 1913, sec. 9654), which passes to the trustee all property which, prior to the filing of the petition, could have been levied upon or sold under judicial process against the bankrupt, the trustee of a bankrupt company may recover a gas engine of which the company had possession as agent, where its creditors could, under Code 1906, section 4784, have treated the engine as belonging to the company.

APPEAL from the circuit court of Newton county. HON. C. L. DOBBS, Judge.

Suit by J. W. Gillaspy, trustee in bankruptcy of the Decatur Hardware Company against the International Harvester Company of America. From a judgment for defendant, plaintiff appeals.

Appellant was plaintiff in the court below, and appellee was defendant. From a judgment for defendant, plaintiff appeals.

Section 4784, referred to in the opinion, is as follows:

"If a person shall transact business as a trader or otherwise, with the addition of the words 'agent,' 'factor,' 'and company,' or '& Co.,' or like words, and fail to disclose the name of his principal or partner by a sign in letters easy to be read, placed conspicuously at the house where such business is transacted, or if any person shall transact business in his own name without any such addition, all the property, stock, money, and choses in action used or acquired in such business shall, as to the creditors of any such person, be liable for his debts, and be in all respects treated in favor of his creditors as his property."

*J. R. Rowzee* and *Baskin & Wilbourn,* for appellant.

*M. B. Potter* and *G. C. Tann,* for appellee.

Cook, J., delivered the opinion of the court.

It appears from the record that the Decatur Hardware Company was doing a mercantile business at Decatur in this state. The business conducted by this company was, generally speaking, a retail hardware business. In this connection, the International Harvester Company, manufacturer of agricultural implements and oil engines, had constituted the Decatur Hardware Company its local agent, and in the regular course of business the harvester company had shipped its products to the hardware company to be sold under the terms of its agency contract. It appears that the hardware company conceived the idea that it could build up a trade in forty-five horse power traction engines manufactured by the harvester company. After considerable correspondence between the hardware company and the harvester company, one of these high power engines was shipped to the hardware company. We gather from the correspondence that the harvester company agreed to send an expert to Decatur to assist in demonstrating the en-

gine; that the hardware company had a prospective purchaser in view, and believed that a trade in this class of engines could be built up in Decatur. However, there was some doubt about this, and it was agreed that if no sale was made, the hardware company would pay the freight on the engine, and ship it to some other point to be designated by the harvester company. When the engine reached Decatur it was taken in charge by the hardware company. Several loads of ice were hauled from the depot, a house was moved, and a long string of wagons were drawn about the streets by the engine. This was done to demonstrate the fitness of the engine to perform the work for which it was designed, and, as we understand, this was done to advertise the machine for the purpose of selling same. Because of the inexpertness of the demonstrator, or for some other cause, the engine broke down, and was left in the street. This all occurred before the arrival of the expert from the factory, and while the engine was in the possession of a representative of the hardware company. A few days after the arrival of the engine, the hardware company, upon the petition of its creditors, was declared a bankrupt. The trustee in bankruptcy instituted a replevin suit for the engine, claiming that same was a part of the assets of the bankrupt.

It is contended by the harvester company that the engine in question was never the property of the hardware company; that it was shipped solely for the purposes of demonstration. It is contended by the trustee that the engine was "used or acquired" in the business of the hardware company, and, as to its creditors, it became liable for the debts of the bankrupt. In other words, the trustee claims that the ownership of the engine, so far as creditors are concerned, is fixed by section 4784, Code 1906. The hardware company had a place of business, a house, and had a sign over its doors which read, "Decatur Hardware Company." The engine

in question was not, and could not have been, put inside the storehouse, but it is claimed that it was acquired by the hardware company in "such business" as it was then conducting, and therefore and thereby it was liable to be taken by the trustee on behalf of the creditors of the hardware company. There can be no doubt that the engine was shipped to the hardware company for the purpose of selling the same, if that could be done. It is also true that the harvester company was in doubt about the sale, but nevertheless the machine was acquired by the hardware company for the purpose of selling same. As between the parties to this contract, it may be admitted that the harvester company remained the owner of the machine, but it seems clear that by our statute the engine could have been levied upon and sold by the general creditors of the hardware company. When a trader acquires or uses property in his business, the property so acquired or used, as to creditors, will be treated as the property of the trader, no matter what may be the undisclosed contract of the trader and the party from whom the property is acquired. The property in question was not only acquired in the business, but we think it was also used in the business. There can be no reason to question the authority of the hardware company to sell the engine, either before or after its demonstration. Persons dealing with traders are not burdened with the necessity of inquiring about the ownership of property offered for sale or used in the trader's business. The law fixes the ownership so far as the legal rights of creditors may be affected thereby. The bankrupt act passes to the trustee of the bankrupt all "property which prior to the filing of the petition he could by any means have transferred, or which might have been levied upon and sold under judicial process against him."

Collier on Bankruptcy (10th Ed.), p. 1005, analyzing the provision of the bankrupt act above referred to, has this to say:

"The test is simple and easily applied. Could the property in question have been (1) transferred by, or (2) levied on and sold under judicial process against the bankrupt? If so, it passes to the trustee; if not, it does not. . . . Whether or not the property prior to the filing of the petition, could have been levied upon and sold under judicial process against the bankrupt must be determined by the local law."

Under our statute this engine could have been "levied upon and sold under judicial process" against the hardware company.

*Norris* v. *Trenholm*, 209 Fed. 827, 126 C. C. A. 551, is cited against this view of the law. This was a case arising in this state, and was controlled by our laws. It will be noted, however, that section 4784, Code 1906, was not mentioned or considered by the court in its opinion. We feel sure that this statute was not invoked in that case. If it has been invoked, it is inconceivable that the court would have decided the case without making any reference to the statute.

Reversed and judgment here for appellant.

*Reversed.*