VIRGINIA BOOK CO., Inc., v. SITES.

In re MAGEE.

(Circuit Court of Appeals, Fourth Circuit.     April 30, 1918.)

No. 1618.

BANKRUPTCY ⬥➣140(3)—PROPERTY PASSING TO TRUSTEE—GOODS HELD ON CONSIGNMENT.

Under Code Va. 1904, § 2877, providing that all property or stock acquired or used in the business of a trader, doing business in his own name and not displaying by a sign the name of any partner or principal, shall be liable for his debts, the trustee in bankruptcy of such a trader takes title to his stock, including goods held on consignment.

Appeal from the District Court of the United States for the Western District of Virginia, at Roanoke; Henry C. McDowell, Judge.

In the matter of C. H. Magee, bankrupt; D. P. Sites, trustee. From a decree confirming an order of the referee requiring the Virginia Book Company, Incorporated, to surrender property, that company appeals. Affirmed.

E. W. Poindexter, of Roanoke, Va., and S. S. P. Patteson, of Richmond, Va. (Poindexter, Hopwood & Poindexter, of Roanoke, Va., and J. H. Rives, Jr., of Richmond, Va., on the brief), for appellant.

Robert W. Kime, of Roanoke, Va., for appellee.

Before KNAPP and WOODS, Circuit Judges, and SMITH, District Judge.

KNAPP, Circuit Judge. On September 8, 1916, C. H. Magee, a bookseller and stationer of Salem, Va., filed his petition in voluntary bankruptcy, and adjudication followed the next day. He had been for a year or more the local agent of appellant for the sale on commission of schoolbooks consigned to him under an unrecorded contract by which the legal title of the books remained in the book company. Two days before his petition was filed, and when appellant had reasonable cause to believe that Magee was insolvent, it canceled his agency and repossessed itself of such of its books as he then had on hand, amounting in value to about $450. Upon petition of the trustee in bankruptcy, and after hearing, the referee ordered a return of the books, or their equivalent in money, and this order was confirmed by the District Court. The book company appeals.

The trustee's contention is based upon section 2877 of the Virginia Code, which reads as follows:

"If any person transact business as a trader, with the addition of the words 'Factor,' 'Agent,' 'and Company,' or 'and Co.,' and fail to disclose the

name of his principal or partner, by a sign in letters easy to be read, placed conspicuously at the house wherein such business is transacted, * * * or if any person transact such business in his own name, without any such addition, all the property, stock, and choses in action acquired or used in such business shall, as to the creditors of any such person, be liable for the debts of such person. This section shall not apply to a person transacting such business under a license to him as an auctioneer or commission merchant."

There was no compliance with this provision. The sign on Magee's store gave no indication that he was agent for any of the goods offered by him for sale, and he was not licensed to do business as an auctioneer or commission merchant. Moreover, the books received from appellant were intermingled with those procured from other parties and to all appearance constituted part of the bankrupt's stock in trade. In Hoge v. Turner, 96 Va. 624, 632, 32 S. E. 291, 294, it was said:

"The purpose of the Legislature in enacting the statute, as the title to the original act passed March 28, 1839, shows, was to prevent persons carrying on business under false or fictitious names and firms. The object was to prevent fraud, to compel any person transacting business as a trader to disclose the name of the real owner of the business, if any other there be, to prevent any shifting or evasion of ownership and liability for debts in case of controversy, and to preclude the assertion of secret claims of ownership against creditors of him who has conducted the business, possessed the property, and appeared to be its owner."

To the same effect are Edmunds v. Hobbie Piano Co., 97 Va. 588, 34 S. E. 472, and Partlow v. Lickliter, 100 Va. 631, 42 S. E. 671. And this court, in the recent case of American Piano Co. v. Heazel, 240 Fed. 410, 153 C. C. A. 336, although dismissing the petition to superintend and revise, nevertheless took occasion to say:

"In passing, we think * * * it not amiss to say that we have examined this case upon its merits, and that if the same were here by the proper method we would, with reluctance, feel it our duty to affirm the judgment of the court below."

Granting, as appellant contends, that in each of these cases the opposing creditor had or claimed a lien upon the property in dispute, there is nothing in any of the opinions to suggest that they were decided upon that ground. Every implication is to the contrary. Nor does it appear that the courts of Mississippi, which has an almost identical statute, have made any distinction in giving it effect between lien creditors and general creditors. However that may be, the question here considered has not been an open one in this court since its decision in Chesapeake Shoe Co. v. Seldner, 122 Fed. 593, 58 C. C. A. 261. Without repeating the discussion, it is enough to say that it was there held, under this Virginia statute, that the trustee in bankruptcy of a trader doing business in his own name takes title to all the stock in his store, including goods held by him on consignment, to which he did not have title as between himself and the consignor. Among other things, it was said:

"To all intents and purposes, so far as his creditors' rights are concerned, this statute vests in the trader the title to the consigned goods. It precludes the assertion of secret claims of ownership by the consignor. In other words, it avoids the title of the consignor and gives title to the trader."

The only difference between that case and the case at bar is that in the former the consigned property was in the possession of the consignee when bankruptcy proceedings were commenced against him, while in this case the consignor, with reasonable cause to believe that the consignee was insolvent, and presumably for that reason, repossessed itself of the property just before the consignee filed his petition. But we are clearly of opinion that the mere change of possession, under the circumstances here disclosed, cannot serve to sustain the distinction contended for by the appellant. To hold otnerwise would be to defeat in large degree the declared purpose of the statute and open the door to its easy evasion. If the bankrupt's failure to comply with this statute operated to vest in him quoad his creditors the title to the books in question, as was decided in Chesapeake Shoe Co. v. Seldner, supra, it seems evident that the consignor could not as against creditors reinvest itself with title by taking possession of the property when the bankruptcy of the consignee was impending and the necessary effect of its act was to give it a preference. In other words, since the statute made these books, notwithstanding the concealed reservation of title, the property of the bankrupt quoad his creditors, the book company had no more right to them as against creditors than it had to any other property belonging to his estate. It results that the transaction under review was a voidable preference, and the trustee is therefore entitled to recover the books or their value. We have examined the various cases cited by appellant, but they all relate to recording acts or other state laws which present a different question.

Accepting, as we are bound to do, the construction which the Virginia Supreme Court of Appeals appears to have given to this trader's statute, and taking into account the applicable provisions of the Bankruptcy Act, we deem it not doubtful that the decree appealed from should be affirmed.