## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## BERTRAM S. NUSBAUM, TRUSTEE, V. CITY BANK AND TRUST COMPANY.

### January 19, 1922.

### Absent, Burks and Saunders, JJ.

1. BANKRUPTCY AND INSOLVENCY—*State Statutes Not in Conflict with Bankruptcy Law.*—In the administration of the bankruptcy law State statutes enacted for the protection of creditors are given full force and effect so far as they are not in conflict with the bankruptcy act.

2. BANKRUPTCY AND INSOLVENCY—*Preferences—Conflict of Laws.*— A preference or transfer may be unlawful or fraudulent under the statutes of one State which under identical circumstances would be held valid in another State.

3. BANKRUPTCY AND INSOLVENCY—*Title of Trustee—To What Property Trustee Entitled—Right to Set Aside Conveyances by Bankrupt.*—A trustee in bankruptcy under section 47a of the bankruptcy act, as amended in 1910 (U. S. Comp. St., sec. 9631), is vested with all the rights of a judgment creditor holding an execution returned unsatisfied. This section, however, does not define and limit all of the trustee's rights. He takes not only all of the rights of the bankrupt in his property, having power to set aside certain transactions, but he also succeeds to all of the rights of creditors of the bankrupt, including the right to set aside conveyances which bind the bankrupt, and takes title to certain property with which the bankrupt has voluntarily parted and could not reclaim.

4. BANKRUPTCY AND INSOLVENCY—*Agency—Virginia Traders' Act— Goods on Consignment.*—The Virginia traders' act (Code 1919, sec. 5224) provides that, if any person transact business as a trader in his own name, and fail to disclose the name of his principal or partner by a sign in letters easy to be read, placed conspicuously at the house wherein such business is transacted, and also by a notice published, then all the property, stock, and choses in action acquired or used in such business shall, as to the creditors of such person, be liable for his debts.

. *Held:* That a corporation engaged as a trader in buying and selling motor vehicles and their accessories in its corporate name was a trader within the act, and a truck consigned to it for sale was subject to its debts.

5. BANKRUPTCY AND INSOLVENCY—*Preferences—General Rule.*—The rule is that a preference is unlawful under the bankruptcy act if made within the prescribed four months, if it be alleged and proved that at the time of the transfer the party making it was insolvent, that the property transferred was such that his creditors had the right to have it subjected to their claims, that he intended to create a preference, and that the transferee had reasonable cause to believe that the transferor had such an intention.

6. BANKRUPTCY AND INSOLVENCY—*Preferences—Proceeds of Consignment Sale—Case at Bar.*—In the instant case, the bankrupt, a corporation engaged in buying and selling motor vehicles and accessories in its corporate name, received a truck on an unrecorded consignment for sale contract. A few days after the . receipt of the truck the secretary of the company sold it and with the proceeds of the sale paid defendant bank $2,250 in settlement of five notes of the corporation, upon which the secretary was an indorser, enabling the bank to obtain a greater percentage of its debt than any other creditor of that class. The payment was within four months of the corporation's bankruptcy.

*Held:* That the truck being liable to the corporation's creditors under the Virginia traders' act (Code 1919, sec. 5224), this payment constituted a preference which the trustee could recover . from defendant bank.

Error to a judgment of the Circuit Court of the city of Norfolk in a proceeding by motion for a judgment for damages. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Jas. G. Martin* and *Chas. L. Kaufman,* for the plaintiff in error.

*L. B. Cox,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

The plaintiff, Bertram S. Nusbaum, trustee in bankruptcy for Gatewood & Steinbaugh, Inc., filed his motion against the City Bank and Trust Company, alleging that there had been illegal transfer within the four months preceding the filing of the petition in bankruptcy, whereby the bank, as creditor of the bankrupt, had obtained a greater percentage of its debt than any other creditor of the same class, and that when the transfer was made, the creditor had reasonable cause to believe that such transfer would result in such a preference. There was a jury trial and a verdict in favor of the plaintiff, which the judge of the trial court set aside as contrary to the law and the evidence, and thereupon entered judgment in favor of the defendant, which is here for review.

The pertinent facts as to which there is no conflict are these: The bankrupt corporation filed its petition October 14, 1919, and was subsequently adjudicated a bankrupt. It was engaged as a trader in buying and selling automobile accessories and supplies and in repairing such vehicles, and transacted all of its business in its corporate name, Gatewood & Steinbaugh, Inc. It had ordered thirty automobile trucks from Larrabee-Deyo Motor Truck Company, Inc., under a conditional sale contract, to be delivered at stated intervals, for resale, which contract was never recorded. Only one of these trucks appears to have been delivered, and the agreement with reference thereto appears to have been subsequently changed, and thereafter, on October 1, 1919, it was agreed that this truck should be held under a consignment contract with the power to the consignee to sell and obligation to account for the proceeds thereof to the consignor, Larrabee-Deyo Motor Truck Company, Inc. This contract was never recorded. R. A. Williams, secretary of the bankrupt corporation, a few days after the date of this consignment contract, stored the truck in his own name with the Southgate Terminal Corporation on October 3,

sold it October 8 for $2,350, and paid the bank $2,250 in settlement of five notes of the corporation, of which only $800 was then due, the said Williams at the time being liable therefor as endorser; the effect of which was to enable the bank to obtain a greater percentage of its debt than any other creditor of the same class.

[1, 2] In the administration of the bankruptcy law, it is perfectly well settled that the State statutes enacted for the protection of creditors are given full force and effect, so far as they are not in conflict with the bankrupt law. It follows, therefore, that a preference or transfer may be unlawful or fraudulent under the statutes of one State which, under identical circumstances, would be held valid in another State. In most of the States, in the absence of a controlling statute, where there is such a bailment as here appears, the title of the bailor is superior to that of the trustee in bankruptcy who takes no title thereto, even if in the bankrupt's possession at the time of his appointment, and the trustee could not set aside a transfer thereof by the bankrupt in anticipation of bankruptcy.

[3] The learned judge of the trial court appears to rest his judgment largely upon the language of section 47-a of the bankrupt act, as amended in 1910 (U. S. Comp. St., §1631), where it is said that the trustee "shall be deemed vested with all the rights of a judgment creditor holding an execution returned unsatisfied," as though that language and that section defined and limited all of the trustee's rights.

There are, however, several other sections of the act which define the trustee's rights, duties and powers. He takes not only all of the rights of the bankrupt in his property, having power to set aside certain transactions, but he also succeeds to all of the rights of creditors of the bankrupt, including the right to set aside conveyances which bind the bankrupt, and takes title to certain property with

which the bankrupt has voluntarily parted and could not reclaim. It is said in 2 Remington on Bankruptcy, page 943, that "it is doubtless true that the trustee's title since the amendment of 1910, is the most extensive and complete of any in jurisprudence."

In *Brown* v. *Crawford* (D. C.), 252 Fed. 252, this statement appears: "The property to which the trustee succeeds is that which, prior to the filing of the petition in bankruptcy, the bankrupt could by any means have transferred, or which might have been levied upon and sold under judicial process against him. Section 7-a, bankruptcy act (act July 1, 1898, c. 541, 30 Stat. 548, Comp. Stat. 1916, sec. 9591). This covers any interest in the property the bankrupt may have had, however minute, that was subject to transfer by him, or levy and sale by judicial process. The statute is designed to be so broad and searching as to comprise all property that the bankrupt may have that may be of use or benefit to him, however small. * * * The statute deals with the property of the bankrupt, not with that of another, and is designed to vest the trustee with the broadest rights, remedies and powers commensurate with possessing himself of the property of the bankrupt for the benefit of the creditors. It not only vests the trustee with the rights of the bankrupt, standing in his shoes, but with all the rights of a creditor, whether he or the court is in or out of possession."

The case of *Acme Harvester Co.* v. *Beekman Lumber Co.*, 222 U. S. 300, 32 Sup. Ct. 96, 56 L. Ed. 208, which is cited in the opinion of the trial judge, does not appear to us to be enlightening here, because the question there decided was that an attachment could be prosecuted in a State court, notwithstanding there had been a petition in bankruptcy filed, where the bankruptcy was never adjudicated, but with the sanction of the federal court the property of the debtor was held by a creditors' committee for five years.

The other case cited is *Bailey* v. *Baker Ice Machine Co.,* 239 U. S. 268, 36 Sup. Ct. 50, 60 L. Ed. 275. The question there was whether a contract of a conditional sale, with a chattel mortgage back, securing the deferred installments of purchase money, executed more than four months before the bankruptcy, but recorded within less than that period before the bankruptcy, could be set aside as an unlawful preference; and it was held that the mere recordation of the paper within four months was not to be construed as an unlawful transfer within the meaning of the act.

[4] The determination of the precise question here involved depends upon whether or not the automobile truck and its proceeds were assets in the possession of the bankrupt which could have been subjected by its general creditors, and its liability to be thus subjected depends upon whether or not the automobile and the proceeds arising from its sale were acquired by the bankrupt as a trader within the meaning of the Virginia traders' act (Code 1919, sec. 5224). That act provides that if any person transact business as a trader in his own name, and fail to disclose the name of his principal or partner by a sign in letters easy to be read, placed conspicuously at the house wherein such business is transacted, and also by a notice published for two weeks in a newspaper (if any) printed in the city, town or county wherein the same is transacted, then all the property, stock and choses in action acquired or used in such business shall, as to the creditors of any such person, be liable for his debts.

That this corporation was a trader engaged in the business of barter and sale of certain classes of merchandise is perfectly apparent, and we know of no sufficient reason for holding that the automobile truck and its proceeds here involved were not acquired by the bankrupt as a trader. The evidence discloses that it had but one business and no other reason for acquiring it except to sell it.

In *Edmunds* v. *Hobbie Piano Co.,* 97 Va. 588, 34 S. E.

472, this court held that pianos and organs which were consigned to the Hobbie Piano Company for sale under written contracts were assets in the possession of the Hobbie Piano Company liable for the satisfaction of the general creditors of that company, and in this connection used this language: "If it were held otherwise, any trader doing business under a general merchant's license, apparently on his own account, could fill his storeroom with consigned goods, create the impression that he was the owner, obtain credit upon the faith thereof, and when his creditors demanded payment, make known for the first time that the goods were not his; and thus he and those who had entrusted him with their goods could perpetrate a fraud upon his creditors. To prevent just such frauds was one of the objects of the statute." 13 Va. Law Reg. 172; *Hoge* v. *Turner*, 96 Va. 632, 32 S. E. 291; *Partlow* v. *Lickliter*, 100 Va. 631, 42 S. E. 671.

[5] The rule is that a preference is unlawful under the bankrupt act, if made within the prescribed four months, if it be alleged and proved that at the time of the transfer the party making it was insolvent, that the property transferred was such that his creditors had the right to have it subjected to their claims, that he intended to create a preference, and that the transferree had reasonable cause to believe that the transferor had such an intention. *In re Leech*, 171 Fed. 625, 96 C. C. A. 424, 22 Am. Bankr. Rep. 599.

In *Chesapeake Shoe Co.* v. *Seldner*, 122 Fed. 594, 58 C. C. A. 261, it is held that the trustee in bankruptcy of a merchant doing business in this State in his own name, takes title, under the Virginia statute, to all the stock in his store, including goods held by him on consignment to which he had no title as between himself and the consignor.

In the recent case of *Virginia Book Co.* v. *Sites*, 254 Fed. 46, 165 C. C. A. 456, this appears: The bankrupt trader had been for a year or more the local agent of the Virginia Book Company, at Salem, Va., for the sale on commission of school

books, consigned to him under an unrecorded contract by which the legal title of the books remained in the book company. Two days before the petition in bankruptcy was filed, and when the book company had reasonable cause to believe that the trader was insolvent, it canceled his agency and repossessed itself of such of the books as he then had. Upon petition of the trustee in bankruptcy, it was held that by virtue of the traders' act and its construction by the Virginia courts, the trustee could recover, and that the return of the books to the consignor under such circumstances was a voidable preference under the bankrupt act. (U. S. Comp. St. §§ 9585-9656.)

Observe that in the case here under review there is no question between the trustee and the original vendor, who was also consignor of the automobile truck, nor between an innocent purchaser thereof for value and the trustee. The question here at issue is between the trustee and the bank as a creditor of the bankrupt who by means of the transaction which is attached has received a greater percentage of its debt than the other creditors.

Mississippi has a statute quite similar to the Virginia traders' act. A company dealing in hardware which had transacted business in its own name, when adjudicated a bankrupt had in its possession as agent for the manufacturer an engine which it had been demonstrating in the hope of making a sale. In an action brought by the trustee in bankruptcy against the manufacturer of the engine, it was held, that because of this statute the creditors were entitled to treat the engine as the property of the bankrupt company, and that the trustee in bankruptcy was entitled thereto. *Gillaspy* v. *International Harvester Co. of America,* 109 Miss. 136, 67 So. 904.

[6] Unless this line of cases is to be repudiated, it seems clear to us that the trial court erred in setting aside the verdict. The main purpose of the bankrupt act is to enforce

equality as between the creditors of the same class, and hence it avoids all preferences made within the four months preceding the filing of the petition in bankruptcy. It is perfectly clear from the authorities that if the automobile truck had not been sold at the time the petition was filed, it would have constituted a part of the assets of the bankrupt for distribution among its creditors. It is also clear that if the proceeds of such sale had been held by the bankrupt at that time they would have passed as a part of his assets to the trustee in bankruptcy. It seems to us to follow logically and inevitably that as either the property or the proceeds arising from its sale could have been subjected by the general creditors to their debts under the Virginia statute, so the disposition thereof by the bankrupt for the benefit of one creditor in diminution of the assets to which all the creditors could have resorted, is clearly within the inhibition of the bankrupt act. Such property, being liable under the Virginia statute, is *quoad* his creditors like the other property of the trader to which he has absolute title, and hence in case of bankruptcy constitutes assets for distribution to his creditors. If we consider the question an open one, we might elaborate the reasons for this conclusion, but following the cases which we have cited, we regard it as closed, and, however great the possible hardship may be in some instances, those who deal with merchants in Virginia should take notice of the Virginia traders' act and be observant of the risks they incur as well as of the advantage accruing thereunder.

The judgment of the trial court in favor of the defendant will, therefore, be reversed, and we will enter judgment here in accordance with the verdict of the jury in favor of the plaintiff.

*Reversed.*