## Wytheville.

## Capitol Motor Corporation, Et Al., v. Harry M. Lasker, Inc.

### June 12, 1924.

1. Agency—*Traders Act—Purpose of Act.*—The purpose of the traders act (section 5224 of the Code of 1919) was to prevent persons carrying on business under false or fictitious names and firms, and to prevent fraud.

2. Traders Act—*Trust Agreement—Recording—Case at Bar.*—The instant case was an action of detinue brought by the plaintiff, a corporation engaged in the business of supplying credit to dealers in automobiles, against defendant, a dealer. Under an agreement between the parties plaintiff placed automobiles on consignment with the dealer, each under a separate trust receipt setting forth the terms and conditions upon which such cars should be held. These trust receipts were not recorded. Defendant contended that plaintiff's lien under these trust receipts was a secret lien, and in fraud of the rights of defendant's general creditors.

   *Held:* That if the act of plaintiff was fraudulent it was rendered so by the acquiescence of defendant; that plaintiff had a right to enter into the transaction, taking as it did the risk of having the automobiles subjected to the debts of defendant before it could enforce its trust lien; that as between plaintiff and defendant the recordation of the trust agreement was an immaterial matter, but not as between plaintiff and the other creditors of defendant.

3. Traders Act—*Trust Agreement—Automobile Dealer—Case at Bar.*—In the instant case, an action of detinue brought by the plaintiff, a corporation engaged in the business of supplying credit to dealers in automobiles, against defendant, a dealer, under an agreement between the parties plaintiff placed automobiles on consignment with the dealer, each under a separate trust receipt setting forth the terms and conditions upon which such cars should be held. These trust receipts were not recorded.

   *Held:* That the automobiles thus placed on consignment with the dealer constituted in part his apparent assets and could be subjected under the traders act to satisfy the claims of his lien creditors.

4. Traders Act—*Construction—Property Subject to Lien—Lien Creditors.*—

The traders act (section 5224 of the Code of 1919) is applicable only to property, stock, etc., used in the business of the trader—*i. e.,* property, stock, etc., which constitutes, in whole or in part, the apparent assets of the business of the trader, at the time in question— and the creditors who are entitled to claim the benefit of such act are lien creditors only, or some representative of theirs, such as their trustee, and whether the lien be obtained by deed of trust, execution, or otherwise, is immaterial.

5. ASSIGNMENTS FOR THE BENEFIT OF CREDITORS—*Traders Act—Intervention of Trustee under Deed of Assignment.*—In an action of detinue against a dealer in automobiles to recover certain automobiles, the trustee in an assignment by defendant for the benefit of his creditors was the proper person to intervene on behalf of defendant's creditors, who immediately upon the recordation of the deed of assignment became lien creditors. To require each person asserting a claim against the alleged debtor to intervene in the action of detinue, would, in all likelihood, produce confusion.

6. WORDS AND PHRASES—*Creditor.*—A creditor is "one who has the right to require the fulfillment of an obligation or contract."

7. BANKRUPTCY AND INSOLVENCY—*Assignments for the Benefit of Creditors—Powers of Trustees—Traders Act.*—Doubtless a trustee in bankruptcy has more extensive powers than a trustee in a deed merely to secure creditors; but there is no good reason why there should be a distinction between the right of a trustee in bankruptcy to sue for the benefit of creditors and the right of a trustee under deed of assignment to sue for the protection of creditors under the traders act, even though one be a trustee by operation of law and the other by the act of the assignor.

8. TRADERS ACT—*Apparent Assets of the Business—Case at Bar.*—In the instant case, on November 4, 1921, plaintiff by its action of detinue instituted and its bond given that day, and the possession taken that day by the sheriff under the bond, repossessed itself of six automobiles consigned by it to defendant, so that after November 4th, those six automobiles were no longer a part of the apparent assets of the business of the trader, the defendant; that is to say, after that date the traders act was no longer applicable to those six automobiles, and an assignment for the benefit of creditors by the defendant on November 7th could not and did not convey any rights under the traders act to the trustee, or to any creditors, as to these six automobiles. But as to two other automobiles which plaintiff did not obtain possession of until November 10, 1921, they continued to be a part of the apparent assets of the trader, the defendant, and therefore, as property to which the traders act was applicable, passed to the trustee by the assignment for the benefit of creditors.

Error to a judgment of the Law and Equity Court of the city of Richmond, in an action of detinue. Judgment for plaintiff. Defendant assigns error.

*Affirmed in part; reversed in part.*

The opinion states the case.

*D. M. White* and *A. J. Ellis,* for the plaintiffs in error.

*McGuire, Riley & Eggleston,* for the defendant in error.

Campbell, J., delivered the opinion of the court.

This is an action of detinue instituted by the defendant in error (hereinafter called plaintiff) against plaintiff in error (hereinafter called defendant), seeking to recover of defendant eight specified automobiles, which plaintiff claimed it was entitled to by virtue of a written contract, and eight trust receipts, each for a specified car.

The plaintiff is a New York corporation engaged in the business of supplying credit to dealers in automobiles.

The defendant was engaged in the business of buying and selling automobiles, wholesale and retail, at Richmond, Virginia.

On the first day of July, 1921, the plaintiff and defendant entered into an agreement which provided, among other things, the following:

"Agreement made this 1st day of July, 1921, by and between Harry M. Lasker, Inc., hereinafter called the 'purchaser,' and The Capitol Motor Corporation,

Richmond, Va., hereinafter called the 'dealer,' Witnesseth:

"The parties hereto in consideration of the mutual promises herein, and of the sum of one dollar ($1.00), receipt whereof is hereby acknowledged, do hereby mutually agree as follows:

"1. Upon the request of the dealer, the purchaser agrees for a period of one year from date hereof, unless the agreement be sooner terminated by the purchaser pursuant to the provisions of paragraphs 5 and 6 of this agreement, to purchase from the factory or from a distributor, if delivery can be obtained either from the factory or from a regular distributor, new and unused Premier and Briscoe automobiles or any of them and to pay therefor the full factory charge; and the dealer agrees upon delivery of each car to pay the purchaser for an option to purchase said cars, a sum equal to twenty per cent of the standard factory price, plus freight and war tax, plus all extra charges added to the standard factory prices by reason of special order, but the total amount spent in purchase of such cars by the purchaser and outstanding at any time shall not exceed ($15,000.00) fifteen thousand dollars above the payment made to the purchaser by the dealer; and the purchaser further agrees to place such cars on consignment with the dealer, each under a separate trust receipt setting forth the terms and conditions upon which such cars shall be held, which trust receipt shall be in the form hereto annexed.

"2. The terms and conditions of such trust receipts and each of them, shall be deemed, and shall become a part of this contract. In case such cars shall be sold in accordance with the terms of such trust receipts and the proceeds of such sale turned over to the purchaser, or in case the option herein given to the dealer shall be

exercised, then the purchaser agrees to purchase other cars upon the terms and conditions set forth above in place of the cars so sold and to consign them to the dealer upon the same terms and conditions upon which the cars thus sold had been consigned, but the total amount spent in the purchase of such cars and outstanding at one time shall not exceed the amount above set forth.

"3. The purchaser further agrees to give the dealer an option to purchase said cars, so consigned, or any of them, in accordance with the terms of an option to be executed at the time of the purchase of the cars, and its consignment by the purchaser to the dealer. Said option is to be in the form hereto annexed, and the price which the dealer is to pay for purchase of the cars, in case he wishes to avail himself of the option, is to be the sum paid by the purchaser less the amount paid for the option by the dealer, as set forth in paragraph 1.

"4. The dealer agrees to pay to the purchaser for the option above mentioned and the obligations hereby assumed by the purchaser, in addition to the payment called for in paragraph 'one,' the sum of two hundred and fifty-five dollars ($255.00) monthly, during the period from July 1, 1921, to June 1, 1922, and he will make and deliver to the purchaser his promissory notes to secure such monthly payments.

\* \* \* \* \* \* \*

"6. In the event of the filing of a petition in bankruptcy by or against the dealer, or assignment by the dealer for benefit of creditors, or his insolvency, or inability to continue business for any reason whatsoever, or the appointment of a receiver, or the filing of judgment, or the issuance of execution or distress warrant against the dealer or his property, or upon default or violation by the dealer of any of the terms and condi-

tions of this agreement, or upon the termination of same, or in case a petition in bankruptcy shall be filed against the factory, or the factory shall file a voluntary petition in bankruptcy or make an assignment for the benefit of creditors, or shall for any reason whatsoever be unable to continue business, or a receiver of such factory shall be appointed, then in any one or more of such events, all cars delivered hereunder and not disposed of, as herein provided, shall be immediately redelivered to the purchaser without cost or expense to and without payment whatsoever by the purchaser.

"7. Upon the expiration of this agreement, the obligation of the purchaser to make any further purchases of cars shall cease; but all cars consigned to the dealer prior to such time shall be held by the dealer for the purchaser subject to the terms and conditions of this agreement and of the trust receipt."

In addition to this agreement, the defendant executed a "trust receipt" upon each car received by it from the manufacturer. Neither the agreement nor trust receipts were recorded. This arrangement between plaintiff and defendant remained in force until November, 1921, when the plaintiff instituted its action of detinue to recover the eight automobiles, the subject of this controversy, alleging a breach of the contract by defendant.

On the 4th day of November, 1921, armed with an order of seizure, the sheriff went to the place of business of defendant and repossessed six of the automobiles alleged to be the property of the plaintiff.

On November 7, 1921, defendant executed a deed of assignment, conveying the eight automobiles claimed by plaintiff to George B. White, trustee.

On the 10th day of November, the other two cars were seized by the sheriff and turned over along with

the other six to the plaintiff, who gave bond as provided by law.

On November 16, 1921, George B. White, trustee, filed his bill, in the law and equity court, against plaintiff and defendant, praying, among other things, that the court deliver to him the eight automobiles, and further praying that the court advise and instruct him as to his rights as trustee.

In disposing of this cause the trial court entered the following decree:

"This day came the complainant and tendered and read to the court his bill, verified by affidavit, and moved the court for an injunction and receiver in accordance with the prayer thereof; the defendant Harry M. Lasker, Inc., likewise appearing by counsel.

"Whereupon the court is of opinion that the said defendant holds possession of the automobiles mentioned in the bill by virtue of a legal process issued under section 5797 of the Code of Virginia and that the rights of all parties having claim to said automobiles are protected by law, and that no such irreparable damages are clear as authorizes a court of equity to interfere with possession validly acquired as allowed by statute. The injunction and receiver *pendente lite* as applied for are therefore denied. The plaintiff trustee should inspect the bond given by the plaintiff in the detinue action and satisfy himself as to its validity and sufficiency. The plaintiff trustee may intervene in such action under section 5800 of the Code and then or in any event the court will direct this plaintiff to be made party defendant in the common law action, and protect his rights in the final judgment therein as provided by section 5801 of the Code."

Following the direction of the court, the trustee filed his petition and became a party defendant in the detinue action, as provided by law.

On the 27th day of April, 1922, upon the issue joined, the case was tried by a jury, which rendered a verdict in favor of the plaintiff for the eight automobiles and fixed the alternate value thereof at $6,540.00. Upon this verdict judgment was entered by the court.

Among the assignments of error relied on are: 1st, the refusal of the court to give certain instructions asked for by the defendant, and in giving certain instructions on the motion of the plaintiff; 2nd, the admission of the trust receipts and agreement in evidence; and 3rd, in refusing to set aside the verdict and entering judgment for the defendant.

Under the view we have of this case, we do not deem it necessary to pass upon these assignments of error.

The main questions involved may be stated thus: (1) Were the eight automobiles, or any of them, liable to the creditors of the defendant under section 5224 of the Code, known as the traders act; and (2) did White, the assignee, have the right to recover the eight automobiles or any of them for the benefit of the creditors of the defendant?

So much of section 5224, Code of 1919, as is applicable is as follows: "If any person transact such business in his own name   *   *   *   all the property, stock and choses in action acquired or used in such business shall, as to the creditors of any such person, be liable for the debts of any such person."

It is earnestly contended by counsel for the defendant that in construing this statute the question of the *true ownership* of the property is not involved, that the only question for determination is whether the stock or property was acquired or used in such business. Citing *Hoge* v. *Turner*, 96 Va. 624, 32 S. E. 291. That the lien which the plaintiff seeks to assert is a secret

lien and is in fraud of the rights of the general creditors.

[1] Judge Riely, in delivering the opinion of the court in *Hoge* v. *Turner, supra,* said: "The purpose of the legislature in enacting the statute, as the title of the original act passed March 28, 1839, shows, was to prevent persons carrying on business under false or fictitious names and firms. To prevent fraud," etc.

Numerous cases have been cited dealing with this statute. *Edmunds* v. *Hobbie Piano Co.,* 97 Va. 588, 34 S. E. 472; *Partlow* v. *Lickliter,* 100 Va. 631, 42 S. E. 671; *Virginia Book Co., Inc.,* v. *Sites,* 254 Fed. 46, 165 C. C. A. 456; *Boice* v. *Finance and Guaranty Corporation,* 127 Va. 563, 102 S. E. 591, 10 A. L. R. 654.

[2] In all of these cases the question presented was either a contest between the trader and creditors, between judgment creditors and lienor, or between an innocent purchaser for value and lienor or seller. The instant case is different. Here there is no contention that the dealer is trying to perpetrate a fraud on its creditors. On the contrary, the dealer, or to be more exact, its assignee, is extremely virtuous and is seeking to prevent one of its creditors from perpetrating a fraud upon all of its other creditors. If the act of the plaintiff is fraudulent, it was rendered so by the acquiescence of the defendant. We do not think the action of the plaintiff was in any respect fraudulent. It had a right to enter into the transaction, taking as it did the risk of having the automobiles subjected to the debts of defendant before it could enforce its trust lien. So as between plaintiff and defendant the recordation of the trust agreement was an immaterial matter. But as between plaintiff and the other creditors of defendant a different situation is presented.

[3] Until the institution of the action of detinue and the execution and recordation of the deed of as-

signment, we have no difficulty in holding that the eight automobiles constituted in part the apparent assets of the defendant dealer, and could be subjected to satisfy the claims of creditors, that is, lien creditors.

[4] 1. In answering question number one, we are of the opinion that a proper construction of the "traders act" (section 5224), is that the act is applicable only to property, stock, etc., used in the business of the trader, *i. e.*, property, stock, etc., which constitutes, in whole or in part, the apparent assets of the business of the trader, *at the time in question;* and that the creditors who are entitled to claim the benefit of such act are lien creditors only, or some representative of theirs, such as their trustee, and that whether the lien be obtained by deed of trust, execution, or otherwise, is immaterial.

[5, 6] 2. In answering question number two, we are further of the opinion that White, trustee, was the proper one to intervene in the detinue action; that as trustee under the deed of assignment, he was the representative of the creditors of defendant, who immediately upon the recordation of the deed of assignment, became lien creditors.

To require, as contended for by plaintiff, and as decided by the trial court, each person asserting a claim against the alleged debtor to intervene in the action of detinue, would, in all likelihood, produce confusion untold. If the claim asserted is denied by the debtor the determination of the question of the rights of property would be halted, until the validity of the claim could be established, and thus the right of the party to intervene could be shown. The trial court held only a creditor could raise the question as to the ownership of the eight automobiles. Who is a creditor? Not every one who says "You owe me a debt." A

creditor is "One who has the right to require the fulfillment of an obligation or contract." *Hardy* v. *Norfolk Mfg. Co.*, 80 Va. 423.

In the absence of fraud, the right to the fulfillment of the obligation or contract is established, when the' debtor acknowledges the debt and names the creditor. In this case, while the debtor did not specify the creditors, it acknowledged the debts and made the trustee the representative of those to whom it was indebted.

· In the case of *Nusbaum* v. *City Bank, etc.*, 132 Va. 54, 110 S. E. 363, "the plaintiff, Bertram S. Nusbaum, trustee in bankruptcy for Gatewood & Steinbaugh, Inc., filed his motion against the City Bank and Trust Company, alleging that there had been an illegal transfer of an automobile truck to the bank within four months preceding the filing of the petition in bankruptcy, whereby the bank, as creditor of the bankrupt, had obtained a greater percentage of its debt than any other creditor of the same class.    *    *    There was a verdict for the plaintiff, which the judge of the trial court set aside as contrary to the law and the evidence, and entered judgment in favor of the defendant." Prentis, J., in delivering the opinion of the court, construing section 5224 (traders act), held that the trustee was entitled to sue for and recover damages against the bank for the benefit of the creditors of the bankrupt.

The point is raised by counsel for the plaintiff, that this decision is based upon the powers conferred by the bankruptcy act upon trustees in bankruptcy.

[7]   We do not concur in this contention.   Doubtless a trustee in bankruptcy has more extensive powers than a trustee in a deed merely to secure creditors; but we see no good reason why there should be a distinction between the right of a trustee in bankruptcy to

sue for the benefit of creditors and the right of a trustee under deed of assignment to sue for the protection of creditors under the traders act, even though one be a trustee by operation of law and the other by the act of the assignor..

Upon applying the construction of the traders act as stated, *supra*, to the instant case, we find the following to be the situation:

[8]   On November 4, 1921, plaintiff by its action of detinue instituted, and its bond given that day, and the possession taken that day by the sheriff under the bond, repossessed itself of six of the automobiles on that day; so that after November 4th, those six automobiles were no longer a part of the apparent assets of the business of the trader, the defendant.   That is to say, after that date the traders act was no longer applicable to those six automobiles.

The deed of trust to White, trustee, executed on November 7th, could not and did not convey any rights under the traders act to White, trustee, or to any creditors, as to the six automobiles.   But as to the other two automobiles, plaintiff did not obtain possession of them until November 10, 1921.   They, until that date, continued to be a part of the apparent assets of the said trader, the defendant.   They, therefore, as property to which the traders act was applicable, passed to the trustee, by virtue of the deed of trust executed on November 7, 1921, which gave to the creditors secured in that deed, or the trustee as assignee for their benefit, the right to claim the benefit of the act as to the two automobiles and to recover the same.

The judgment of the trial court as to the six automobiles repossessed by the plaintiff on the 4th day of November, 1921, will be affirmed; the judgment of the trial court as to the two automobiles not so repossessed

by the plaintiff will be reversed and annulled, and instead of remanding the case for a new trial, this court, pursuant to section 6365 of the Code of 1919, will proceed to enter judgment in favor of George B. White, trustee in the deed of assignment executed by the Capitol Motor Corporation, for the benefit of its creditors, against Harry M. Lasker, Inc., for the sum of $1,635.00, the alternate value of the cars, with interest thereon from the 7th day of November, 1921. (It appears from the record that the two cars have been sold by plaintiff.)

George B. White, trustee, substantially prevailing in this litigation, he will be awarded his costs in the trial court and in this court.

*Affirmed in part; reversed in part.*