## SOUTHERN DAIRIES, Inc., v. COOPER.

### In re KEMP.

Circuit Court of Appeals, Fourth Circuit. October 15, 1929.

No. 2871.

Guy B. Hazelgrove, of Richmond, Va. (Williams & Mullen and G. D. Gibson, all of Richmond, Va., on the brief), for appellant.

Before PARKER and NORTHCOTT, Circuit Judges, and SOPER, District Judge.

PARKER, Circuit Judge. This is an appeal in a controversy arising in bankruptcy involving the right to a certain "Frigidaire Iceless Cabinet" in the possession of the bankrupt at the time of the filing of the bankruptcy petition. There is no dispute as to the facts. Bankrupt was conducting in his own name the business of a confectioner in the city of Norfolk, Va. The Horn Ice Cream Company had placed with him the Frigidaire cabinet for use in handling its product. This cabinet was not sold to him conditionally or otherwise, but was leased under an agreement that he should keep it in good condition, use it exclusively for the storage of the ice cream company's product, and purchase from the company a certain quantity of cream per year, or, in lieu thereof, pay rental based upon the deficiency, in the amount purchased. Title remained in the ice cream company, and there was no provision for its passing to the bankrupt by purchase or otherwise. All rights of the ice cream company in the cabinet and the contract of lease were assigned to the Southern Dairies, Incorporated, which filed in the court below an intervening petition claiming the cabinet. Its claim was denied on the ground that, under the Virginia Traders Act, the cabinet was to be deemed the property of the bankrupt quoad his creditors.

The contract under which the cabinet was placed with the bankrupt was a contract of bailment. It was not a conditional sale contract, the recording of which is required by section 5189 of the Virginia Code, nor was it a chattel mortgage or deed of gift or trust or other incumbrance required to be recorded by section 5194 or section 5197. The cabinet had not been in the possession of the bankrupt for five years; and consequently section 5188 of the Code had no application. The title of petitioner was good therefore, not only as against the bankrupt, but also as against his creditors, unless section 5224, known as the Traders Act, is applicable. That section provides:

"Sec. 5224. If factor, agent, etc., who is a trader, fail to disclose name of principal or partner, or do business in his own name, property used in such business liable for his debts; exception.—If any person transacts business as a trader, with the addition of the words 'factor,' 'agent,' 'and company,' or 'and co.,' and fail to disclose the name of his principal or partner by a sign in letters easy to be read, placed conspicuously at the house wherein such business is transacted, and also by a notice published for two weeks in a newspaper (if any) printed in the city, town or county wherein the same is transacted; or if any person transact such business in his own name, without any such addition; all the property, stock, and choses in action acquired or used in such business shall, as to the creditors of any such person, be liable for the debts of such person. This section shall not apply to a person transacting such business under a license to him as an auctioneer or commission merchant."

The original act from which this section of the Code is taken was passed in 1839 (Acts Va. 1839, c. 72), and was entitled "An act to prevent persons from carrying on busi-

ness under false or fictitious names and firms." Section 2 of that act provides:

"That all property, debts, stock and choses in action acquired by any person trading or transacting business in his own name, with the addition of the words 'agent,' 'factor,' 'and company,' or '& Co.' and who does not disclose the name of a principal, or partner, liable for the payment of all the debts incurred in the course of his business, shall, as to all creditors of such person, be taken to be his individual property, and liable to his debts, as if it were acquired solely on his own account."

That act provided against the mischief likely to arise where a merchant, while disclosing the existence of an agency or partnership, fails to disclose the identity of his principal or partner. It failed, however, to cover the case of undisclosed agency or partnership where the existence of the agency or partnership, as well as the identity of the principal or partner, is concealed. The statute was changed when brought forward into the Code of 1849 (c. 145, § 13) so as to read as it now appears in section 5224 of the present Code. And the evident purpose of the insertion of the clause, "or if any person transact such business in his own name, without any such addition," was to remedy the defect of the original statute by covering the case of one who does business for an undisclosed principal or for silent partners without disclosing the existence of the agency or partnership. In other words, the act applies where there is an undisclosed agency or partnership. It has no application to a merchant who is doing business in his own behalf, except in so far as he may be selling goods as agent of another. This, we think, is well settled by the Virginia decisions.

In the case of National Bank v. Cringan, 91 Va. 347, 21 S. E. 820, 825, the Supreme Court of Appeals of Virginia, in passing upon the effect of the act, quoted with approval the following language of the Chancellor below:

"I believe that there is a consensus of opinion in the profession that the statute was intended to meet the common case of a person trading in his own name, either with or without the words 'Agent' or 'Company,' and obtaining credit presumably on the faith of the assets used in such business, and then, when the necessity arises, shielding those assets from the demands of his creditors by claiming that they belong to his principal or to his partner. The statute is aimed at the fraud which might be, and no doubt often was, practiced in this way, and it prevents the fraud by making the assets used or acquired in such business liable for the debts (all the debts) of such person, unless the name of his principal or partner be disclosed in the manner prescribed. An examination of the language of the statute as first enacted in 1839 will materially aid this construction."

In Hoge v. Turner, 96 Va. 624, 32 S. E. 291, 294, the court said:

"The purpose of the legislature in enacting the statute (as the title of the original act passed March 28, 1839, shows) was to prevent persons carrying on business under false or fictitious names and firms. The object was to prevent fraud; to compel any person transacting business as a trader to disclose the name of the real owner of the business, if any other there be; to prevent any shifting or evasion of ownership and liability for debts in case of controversy; and to preclude the assertion of secret claims of ownership against creditors of him who has conducted the business, possessed the property, and appeared to be its owner."

In Edmunds v. Hobbie Piano Co., 97 Va. 588, 34 S. E. 472, the court, after quoting with approval the portion of the opinion which we have just quoted from Hoge v. Turner, said:

"There is as much, if not greater, reason for protecting creditors of a trader doing business in his own name from the secret claims of third parties, as there is for protecting creditors of a person transacting business as a trader with the addition of the words 'Factor,' 'Agent,' 'and Company,' or 'and Co.,' who has failed to disclose his principal or partner in the manner provided by the statute. In the latter case the creditors know that they are dealing with one who does not claim to be the sole owner of the business, while in the former they have the right to believe that the trader is doing business entirely on his account, and is the sole owner of the goods in his possession. To allow him, or third persons who have placed their goods in his possession to be used and sold as if they were his own, so far as the public can see or know, to deny that he was the owner of such goods, as against his creditors, would encourage parties to do the very things which the statute was passed to prevent."

The case last cited seems to us to be conclusive of the question involved in the case at bar. There the Hobbie Piano Company was a corporation engaged in buying and selling musical instruments in its own behalf and in its own name. The question in the case was whether certain property in its possession

belonging to others could be subjected to execution in satisfaction of its debts because of the provisions of the Traders Act. A part of this property consisted of musical instruments which had been left with the company for sale; and as to these it was held that the act applied, and that they were subject to sale under the execution. Office furniture, however, which had been rented with the storeroom, and certain musical instruments, held by the company as bailee without power of sale, were held not subject to the provisions of the act, and hence not subject to sale under execution against the company. This case, while holding that the act applies in the case of a trader doing business for himself and in his own name, limits its application to property of others used in the business in the sense of possessed with power of sale. The office furniture, although used in the business in the same sense that the cabinet here was used, was held not to be used in the business within the meaning of the act. To the same effect, also, is Newcomb v. Guthrie, 145 Va. 627, 134 S. E. 585, where the court held that, notwithstanding the Traders Act, a chattel mortgage on the fixtures of a merchant would be upheld.

There is nothing in the decision in Seventh Street Garage Co. v. Mercer, 150 Va. 269, 142 S. E. 350, which sustains the position of the trustee. In that case it appeared that a service station which was operated in the name of one Plumb belonged, with all of its stock and fixtures, to the Seventh Street Garage. It was held that this property was subject to execution issued against Plumb because of the provisions of the Traders Act. There, however, the business was not being conducted by Plumb for his own benefit, but for the benefit of an undisclosed principal, the Seventh Street Garage. There can be no question that in such case the fixtures of the business belonging to the undisclosed principal, as well as the stock in trade, are liable for the debts of the apparent owner. Here the bankrupt was doing business, not in behalf of an undisclosed principal, but in his own behalf. But, even though this were true, if the property in question had been placed with him for sale, it would be subject to the claims of creditors, under the doctrine of Edmunds v. Hobbie Piano Co., supra. But, being merely a fixture held by bankrupt as bailee without the power of sale, it is not affected by the statute.

We are bound, of course, by the interpretation placed upon a state statute by the courts of the state itself, whether we agree with that interpretation or not. But in this case we agree with it. In the case of a trader transacting business with the addition to his name of the words "factor," "agent," etc., the act, by express provision, is to apply only if the trader shall "fail to disclose the name of his principal or partner by a sign," etc. In such case, therefore, if the trader erects a sign and makes publication disclosing the name of the real owner of the business, the statute has no application. It must have been intended that the same result should follow where the real owner of the business is the trader himself, and where by doing business in his own name he gives all the notice that could be given as to the real ownership. It is true that the statute uses the general language, "or if any person transact such business in his own name without such addition"; but this must be construed in the light of the language of the accompanying provision. Noscitur a sociis. When so construed, it is clear that the statute is intended to apply in such case on the same condition that it is to apply to the cases provided for in the preceding clause, i. e., if such trader shall "fail to disclose the name of his principal or partner by a sign," etc. Of course, if he is doing business for himself in his own name and, consequently, has no principal or partner, there is no occasion for disclosure by means of the sign provided for, and nothing to be disclosed thereby; and, manifestly, the statute has no application to such a case. The statute applies logically in the case of goods belonging to another which are held for sale by a merchant who otherwise is doing business for himself in his own name, as in Edmunds v. Hobbie Piano Co., supra; for as to such goods the merchant is the agent of the owner for the purpose of making sale, and the owner is an undisclosed principal within the meaning of the statute.

Any other interpretation of the statute would lead to great inconvenience and the most absurd consequences. It is settled, for instance, that, where the act is applicable, it makes no difference that the contract between the trader and the owner of the goods has been recorded. Boice v. Finance & Guaranty Co., 127 Va. 563, 102 S. E. 591, 10 A. L. R. 654; Partlow v. Lickliter, 100 Va. 631, 42 S. E. 671. If, therefore, the statute applies in the case of a merchant doing business in his own name, even though he represents no principal or partner, then all chattel mortgages, conditional sales, and bailment contracts given by such merchants on their fixtures are void as against their creditors, even though duly recorded. Moreover, there

is no way for the mortgagee or owner of such fixtures to protect himself; for, as the merchant in such case has no principal or partner, the mortgagee or owner of the fixtures being neither, he cannot give the notice provided by the statute by putting up a sign and making publication. On the other hand, such a mortgage or contract, if properly recorded, would be perfectly good against the creditors of a trader acting in behalf of a principal or partner, if he had put up the sign and made the publication required, even though these contained no notice as to the mortgage or contract under which the fixtures were held; for the statute, by its express terms, does not apply if the sign is erected and publication made disclosing the name of the principal or partner. Under such an interpretation of the statute, therefore, we would have a situation where a recorded chattel mortgage would be good when given by one doing business for another, but invalid when given by one doing business for himself in his own name. It is clear that no such consequences were intended by the statute, and an interpretation leading thereto should be avoided when another and reasonable interpretation can be given it consistent with the legislative purpose. U. S. v. Katz, 271 U. S. 354, 357, 46 S. Ct. 513, 70 L. Ed. 986; Hawaii v. Mankichi, 190 U. S. 197, 212, 23 S. Ct. 787, 47 L. Ed. 1016.

In the case at bar, the bankrupt was doing business for himself in his own name. The cabinet in controversy was held by him, not as a part of his stock in trade, but as a mere bailment without power of sale. We think, therefore, that the Traders Act had no application, and that petitioner was entitled to the cabinet. The decree of the District Court will accordingly be reversed.

Reversed.