## WALTHAM PIANO CO. v. SMITH.

### In re SNOW.

Circuit Court of Appeals, Fourth Circuit. January 14, 1930.

No. 2919.

Thomas J. Williams, of Lynchburg, Va., for appellant.

L. Bradford Waters, of Lynchburg, Va., for appellee.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

WADDILL, Circuit Judge. This is an appeal from an order of the District Court of the United States for the Western District of Virginia, at Lynchburg, entered on August 15, 1929, in the matter of J. E. Snow, bankrupt, dismissing the petition of appellant filed in said bankruptcy proceeding, for the reclamation and return to it of certain property alleged to have been acquired by the bankrupt by fraud.

The agreed facts in the case are: For several years prior to his adjudication as a bankrupt, J. E. Snow conducted in the city of Lynchburg, Va., a store for the sale at retail of pianos and other musical instruments. On March 22, 1928, J. E. Snow gave to the Waltham Piano Company, of Milwaukee, Wis., an order for fifteen pianos, to be sold to him on credit, which pianos were on March 31, 1928, shipped to J. E. Snow at Lynchburg, Va., and were received by him and placed in his storehouse in said

city. Seven of the pianos were afterwards sold and delivered by Snow to his customers, but at the time of his adjudication as a bankrupt, Snow had on hand in his storehouse at Lynchburg eight of said pianos, which were identified as eight of the pianos purchased by, and shipped to, him as aforesaid. The said eight pianos have been sold in this bankruptcy proceeding, and the proceeds thereof, by agreement of the parties, have been deposited to the credit of the court in this cause, subject to the final determination of this controversy.

On December 15, 1927, Snow made, signed, and delivered to R. G. Dun Company, a financial rating company, a written statement of his financial condition as of July 31, 1927, which statement showed an alleged net worth of $54,907.77. Said statement was made by Snow with the intent that it should be relied upon, and for the purpose of procuring, for his own benefit, the sale and delivery to him of personal property and the extension of credit to him. Before accepting Snow's order for the fifteen pianos, the appellant, Waltham Piano Company, obtained from R. G. Dun Company a copy of the aforesaid financial statement furnished by J. E. Snow to that company, for the purpose of determining whether it would extend credit to Snow for the value of said pianos. Furthermore, at the time the order for the pianos was given by Snow to the Waltham Piano Company, he verbally stated to the representative of the piano company who was then making the sale that he (Snow) was then worth $60,000 net, over and above all of his liabilities; and at the same time Snow referred the representative of the piano company to the aforesaid financial statement as showing his then net worth, which statements and representations by Snow were made for the purpose of inducing the Waltham Piano Company to sell and deliver to him the fifteen pianos, and to extend him credit therefor. The fifteen pianos were sold and delivered to Snow by appellant upon credit in reliance upon the representations made it by Snow, as aforesaid, as to his net worth.

At the time that the pianos were bought by Snow, and at the time that the representations as to his net worth were made, he was insolvent to his own knowledge, and the representations were false and fraudulent, and were made by him with the intent to cheat and defraud the appellant, and not to pay for said pianos. Within 90 days from the date of the purchase of the pianos from appellant, Snow was hopelessly and utterly

insolvent, owing $38,000, with assets on which the trustee in bankruptcy realized only $4,-404.07.

On May 19, 1928, Snow abandoned his business and left for parts unknown, and his whereabouts have never been discovered. On May 29, 1928, a receivership suit was instituted in the corporation court for the city of Lynchburg, by certain creditors of Snow, in which suit a receiver was appointed, and who took charge of all of Snow's assets for the purpose of winding up said business. On June 27, 1928, an involuntary petition in bankruptcy was filed against Snow in the United States District Court for the Western District of Virginia, at Lynchburg, and on July 16, 1928, he was duly adjudged a bankrupt, and, at a meeting of his creditors, held on August 1, 1928, Joseph C. Smith was elected trustee for the bankrupt estate.

On August 7, 1928, the appellant, Waltham Piano Company, filed before the referee in bankruptcy its petition, setting out the false and fraudulent representations and the facts heretofore given, and praying for the reclamation and return to it by said trustee in bankruptcy of said eight pianos in the possession of the trustee. The trustee in bankruptcy answered the petition, admitting the purchase of the pianos and the possession by him of eight of them, but denying the fraud charged. Depositions were taken in support of the allegations of the petition, and the referee found, and it is now conceded by the trustee in bankruptcy, that the allegations made in said petition have been fully proven, and are true, and that the said Snow has been proven guilty of all of the acts hereinbefore mentioned as having been committed by him. But it was contended before the referee by the trustee in bankruptcy that the Traders Act of Virginia (section 5224 of Va. Code of 1919) is applicable to the facts of this case, and that, although the pianos were obtained by the bankrupt by fraud, nevertheless, possession of said pianos having been once obtained by the bankrupt, the right of appellant to the pianos is subordinate and inferior to the lien thereon of the trustee in bankruptcy, by reason of the Traders Act. The referee sustained the trustee's contention, and on June 13, 1929, entered an order holding that the Traders Act applied to the facts of the case; that the lien of the trustee in bankruptcy as to said eight pianos, by virtue of the Traders Act, was superior to the claim of the Waltham Piano Company; and thereby dismissing said reclamation petition of the appellant at its costs.

On June 21, 1929, the Waltham Piano Company filed in the United States District Court at Lynchburg a petition for a review of said referee's order, and on August 15, 1929, the said District Court entered its decree approving and affirming said order of the referee, from which decree this appeal is taken.

The assignment of error is as follows: "That the court erred in holding that the Traders Act of Virginia, Section 5224, Code of Virginia of 1919, is applicable to the facts of this case, and in so construing said Traders Act as to include in its operation and intent the property of petitioner acquired by the bankrupt under the circumstances of fraud set forth in the Agreed Statement of this case, especially when such fraudulent acts of the bankrupt are made a felony under the provisions of Section 4459-a of the Code of Virginia (as amended by Acts of 1928, p. 1032); and that the court therefore erred in holding that petitioner was not entitled to recover the eight pianos in controversy."

The sole question is, whether the Virginia statute, known as the Traders Act (section 5224, Code of Virginia of 1919) is applicable to the facts of this case, and whether under such facts, notwithstanding the provisions of section 4459-a of the Code 1924 (as amended by Acts of 1928, c. 408, p. 1032), the trustee in bankruptcy has title to the eight pianos in question, superior to that of the piano company which sold them to the bankrupt. The statute referred to, known as the Virginia Traders Act, is as follows:

"If any person transact business as a trader, with the addition of the words 'factor,' 'agent,' 'and company,' or 'and co.,' and fail to disclose the name of his principal or partner by a sign in letters easy to be read, placed conspicuously at the house wherein such business is transacted, and also by a notice published for two weeks in a newspaper (if any) printed in the city, town or county wherein the same is transacted; or if any person transact such business in his own name, without any such addition; all the property, stock, and choses in action acquired or used in such business shall, as to the creditors of any such person, be liable for the debts of such person. This section shall not apply to a person transacting such business under a license to him as an auctioneer or commission merchant." Section 5224, Code of Virginia of 1919 (Code 1887, § 2877).

This is an old statute in Virginia, which has frequently been under review by the courts, state and federal, and its meaning is fairly well settled.

In the leading case of Hoge v. Turner, 96 Va. 624–632, 32 S. E. 291, 294, Judge Riely, speaking for the Supreme Court of Appeals of Virginia, said:

"The purpose of the Legislature in enacting the statute (as the title of the original act passed March 28, 1839, shows) was to prevent persons carrying on business under false or fictitious names and firms. The object was to prevent fraud; to compel any person transacting business as a trader to disclose the name of the real owner of the business, if any other there be; to prevent any shifting or evasion of ownership and liability for debts in case of controversy; and to preclude the assertion of secret claims of ownership against creditors of him who has conducted the business, possessed the property, and appeared to be its owner.

"The language of the statute is plain, explicit, and imperative. It leaves no room for exception or qualification. If any person, as is alleged in this case, transact business as a trader in his own name with the addition of the word 'Agent,' or in his own name without such addition, and fail to comply with the provisions of the statute, it makes all the property, stock, and choses in action acquired or used in such business absolutely liable for his debts, whether contracted in the particular business or not, and without regard to knowledge by the creditor of the principal, if principal there be. Knowledge or want of knowledge plays no part in the application of the statute. That is an immaterial matter. The only question is whether the person was doing business as a trader, within the meaning of the statute, and has complied or failed to comply with its positive requirements."

Under the interpretation of this act, the possession of property in one's business, without notice of limitation of title to such property in the trader, or indicating any qualification in the manner of trading with the same, carries with it certainly, as between the trader, its apparent owner, and the vendor or consignor of the property, and the creditors of such trader, a superior right to such property in the creditors.

In this case the rather novel and interesting question is presented by the vendor of the property, that the bankrupt perpetrated a fraud upon such vendor in the acquisition of such property, and that hence the Vir-

ginia Traders Act has no application to the transaction, as against such vendor. We have given careful thought to the question thus presented, and are of the opinion that the contention is without merit, and that to adopt that theory would not only be to add to the law as written, but would greatly limit the purpose and benefits of the statute, by giving vendors a lien upon property sold, in the absence of any effort on their part to secure their rights as vendors in the property parted with. We cannot believe that it was the purpose and intent of the Legislature to make any distinction in the operation of the statute between vendors and consignors who were defrauded by a trader, and those who were merely unfortunate or imprudent.

The following authorities are referred to as bearing upon the interpretation of the act: Hoge v. Turner, 96 Va. 624, 632, 32 S. E. 291; Edmunds v. Hobbie Piano Co., 97 Va. 588, 592, 593, 34 S. E. 472; Partlow v. Lickliter, 100 Va. 631, 636, 42 S. E. 671; Capitol Motor Corp. v. Lasker, 138 Va. 630, 639, 123 S. E. 376; Chesapeake Shoe Co. v. Seldner (C. C. A.) 122 F. 593, 597; American Piano Co. v. Heazel (C. C. A.) 240 F. 410, 411; Virginia. Book Co. v. Stites (C. C. A.) 254 F. 46; Patterson-Sargent Co. v. Rumble (C. C. A.) 280 F. 377, 379; Oppenhimer v. Finance & Guaranty Co. (C. C. A. 4th Cir.) 5 F.(2d) 486; Finance & Guaranty Co. v. Oppenhimer, Trustee, 276 U. S. 10, 48 S. Ct. 209, 72 L. Ed. 443; Southern Dairies, Inc., v. Cooper, Trustee (C. C. A. 4th Cir.) 35 F.(2d) 439.

The decree of the District Court is plainly right, and should be affirmed.