# Wytheville

SEABOARD CITIZENS NATIONAL BANK OF NORFOLK V. REUBEN E. SPANDORFER, TRUSTEE, ETC.

June 15, 1933.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Chinn, JJ.

The opinion states the case.

*Mann & Tyler,* for the plaintiff in error.

*Herman A. Sacks,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

We quote below the stipulation of facts appearing in the record as presenting a very clear and concise statement of the circumstances of this case.

### "AGREED STATEMENT OF FACTS.

"It is agreed between the undersigned attorneys representing the plaintiff and the defendants that the following are the pertinent facts in this case:

"1. On November 8, 1930, Shiflet Motor Corporation, which was a corporation created and existing under the laws of the State of Virginia, borrowed from the plaintiff, The Seaboard Citizens National Bank of Norfolk, the sum of $522.22, and delivered to. said bank its note for said amount, and as collateral security therefor two second-hand Essex coupes and the title papers therefor, the said cars bearing engine numbers 913095 and 1096811, respectively. Copy of said note is hereto attached as a part hereof.

"2. On December 18, 1930, Shiflet Motor Corporation borrowed from said plaintiff the sum of $886.74, and delivered to said bank its note for that amount, and as collateral security thereof one new Hudson sedan, engine number 36006, along with a trust agreement in the words and figures following, to-wit:

"Norfolk, Va. 12/18/30.

"Loan of 886.74

"RECEIVED FROM THE SEABOARD CITIZENS NATIONAL BANK the following property held by the bank as security: Hudson Sedan M. 36006 S 916903.

"And in consideration we hereby agree acting as agents for the bank in this matter to hold said property in trust Hudson Sedan M. 36006 S. 916903.

"The intenton of this agreement being to protect and preserve the lien of The Seaboard Citizens National Bank on said property.

"SHIFLET MOTOR CORP.
"By H. A. SHIFLET, Pres.
"H. A. SHIFLET.

"The said note was renewed on February 18, 1931, and copy of the renewal note is hereto attached as a part hereof. No certificate of registration was ever issued by the Motor Vehicle Commissioner on this car.

"3. On February 28, 1931, Shiflet Motor Corporation borrowed from said plaintiff the sum of $812.56, and delivered to said bank its note for said amount, and as collateral security therefor one second hand Nash Sedan, engine number 322560, and one second hand Whippet Coupe, engine number 85743. On March 10, 1931, $300.00 was paid on account of said note, a renewal for $512.56 was given, and the Whippet Coupe was released and a second hand Overland Coupe, engine number 63794, was substituted in its place. The title papers for said three cars were delivered to the bank with said cars. Copy of the said renewal note is attached as a part hereof. The word 'paid' on said note should have been 'released.'

"4. The Shiflet Motor Corporation is also indebted to said bank, in addition to the above notes, in the sum of $4,-900.00, evidenced by two notes for $2,000 and $2,900 respectively, and said bank holds as collateral security for said indebtedness assignments of certain accounts due Shiflet Motor Corporation. It also holds a note of Shiflet Motor Corporation for $568.76, which was secured by an Essex coach, which car was sold but nothing has as yet been paid on said note.

"5. All of the aforementioned automobiles were in the possession of the Shiflet Motor Corporation at the time it borrowed the respective amounts aforesaid and transferred said automobiles to the said bank; and said automobiles were

permitted by the said bank to remain at the place of business of the Shiflet Motor Corporation, with authority to sell the same in the ordinary course of trade, the proceeds of sale to be paid to the said bank and credited on the said notes. The said Shiflet Motor Corporation was, at the time it transferred said automobiles to the said bank, and for some time prior thereto, engaged in the business of selling new and second hand automobiles; and the five automobiles described in the declaration were on the premises of said corporation and were being offered for sale by it, pursuant to said authority, as a part of its stock in trade, and so remained until March 18, 1931, when the Shiflet Motor Corporation executed and delivered to R. E. Spandorfer, trustee, a general deed of assignment which was duly recorded, and the original of which is hereto attached as a part hereof. At the time of the execution and delivery of the said deed of assignment the said R. E. Spandorfer, trustee, had no knowledge of the liens claimed by the said bank or of the transfer of the said automobiles to said bank. Immediately following the delivery of said deed of assignment the said R. E. Spandorfer, trustee, pursuant to the terms of said deed of assignment, took possession of all of the assets of Shiflet Motor Corporation including the five automobiles mentioned in the declaration.

"6. At the time of the transactions with reference to the four used automobiles above mentioned, the Shiflet Motor Corporation had the title papers to said automobiles, which were issued in the names of the former owners and assigned to it in blank. It delivered these certificates to the bank at the time of the respective loans, and the bank held the same until after the deed of assignment had been delivered and recorded, and it then delivered the said certificates to the Motor Vehicle Commissioner, after filling in its own name in the blank assignments, and thereupon new certificates for the said four used automobiles were issued to The Seaboard Citizens National Bank of Norfolk. The new certificates were issued on the 30th day of March, 1931, before the pend-

ing suit was instituted. When the title certificates were delivered to The Seaboard Citizens National Bank by the Shiflet Motor Corporation, they contained no endorsements of any liens in favor of The Seaboard Citizens National Bank.

"7. On the 30th day of March, 1931, the plaintiff instituted this suit, and having made the affidavit and duly entered into the bond required by law, the five automobiles described in the declaration and also above were taken possession of by the sergeant of the city of Norfolk, under a writ issued in this cause and removed from the premises, and the possession thereof was on said March 30, 1931, delivered by said sergeant to the plaintiff, which has continued to have and now has the possession of the same.

"8. On the 6th day of April, 1931, the Shiflet Motor Corporation was duly adjudicated a bankrupt in the District Court of the United States for the Eastern District of Virginia, on the ground that it had made the above mentioned assignment for the benefit of its creditors; and in said bankruptcy proceedings, R. E. Spandorfer was elected trustee on the 12th day of May, 1931, and duly qualified as such trustee.

"9. The values of said five automobiles are substantially as set forth in the declaration.

"SUPPLEMENTAL AGREED STATEMENT OF FACTS.

"It is further agreed between counsel for the parties hereto: 1st. That the requirements of section 5224 of the Code of Virginia were not compiled with.

"2nd. That at the time the automobiles were repossessed, the bank had been advised of the general deed of assignment and that the Shiflet Motor Corporation was insolvent; but it believed the said corporation to be solvent at the time that the several loans were made and the notes and security were taken, and had no information to the contrary."

The action was in detinue by the bank to recover one new

automobile and four used ones which were in the constructive possession of Spandorfer, trustee, by virtue of a general deed of assignment to him by the Shiflet Motor Corporation and as trustee in bankruptcy of the motor corporation. The deed of assignment was dated March 18, 1931, the date of the institution of the action was March 30, 1931, the adjudication of bankruptcy was on April 6, 1931, and Spandorfer was elected trustee in bankruptcy on May 12, 1931. Upon the institution of the action the bank, plaintiff, gave the bond required by law, and the sergeant under authority delivered the actual possession of the automobiles to the bank.

The bank claimed the automobiles as its property by reason of the facts set forth above relating to the indebtedness of the motor corporation to it. The deed of assignment conveyed to the trustee all of the assets of the assignor for the benefit of its creditors, including the bank, without preference, the automobile at the time being in its possession the possession and title thereto passing then to the trustee.

The case was submitted to the court for its determination without the intervention of a jury. The judgment of the court was in favor of the trustee in bankruptcy for the Shiflet Motor Corporation, holding that the title to the automobiles was vested in the trustee and that the bank was not entitled thereto or the possession thereof and ordered that the bank deliver to the trustee the automobiles or their alternate aggregate value of $1,705.00.

Upon a writ of error and supersedeas the case is before this court.

It is conceded by the parties litigant that the pivotal question upon which the controlling issues in this case turn is the effect of the subsequent adjudication of bankruptcy of the motor corporation upon the deed of assignment previously made by it for the benefit of its creditors, whether the assignment was rendered void by the bankruptcy or merely voidable. If void, as is the contention of the bank, then its

lien, sought to be perfected after the deed of assignment was executed and recorded but before the bankruptcy adjudication, upon the automobiles, if valid, would take precedence over the bankrupt's other creditors.

The contention of the trustee is that the deed of assignment was only voidable and that as it contained no provision of preference as between the creditors of the motor corporation, it was in harmony with the spirit and the purpose of the Bankrupcty Act (11 U. S. C. A.) ; the latter simply affording a different medium of administration of the bankrupt's estate.

It must be kept in mind that when the bank made loans to the motor corporation and accepted the automobiles as collateral it allowed the corporation to retain the automobiles as a part of its trading stock which, of course, became the subject of daily barter and trade by the motor company, by express agreement with the bank, upon condition that the proceeds of sale of any pledged cars would be paid to the bank and credited upon the indebtedness of the motor corporation.

This was a private arrangement between the bank and the corporation of which the public had no knowledge. To all legal intents and purposes the automobiles were the property of the motor corporation with no strings tied to them. The bank had no valid liens on the automobiles as against the creditors and those dealing with the corporation, indeed, it did not undertake to perfect its title to them until after the deed of assignment was made to Spandorfer, trustee, which was on March 18, 1931. At that time the automobiles were just as though they belonged to the corporation without encumbrance or any indicia thereof. It is admitted that there was no compliance with section 5224 of the Code of Virginia, known as the "Traders Act."

The applicable part of this section is as follows: "* * * or if any person transact such business in his own name, without any such addition; all the property, stock, and choses in action acquired or used in such business shall,

as to the creditors of any such person, be liable for the debts of such person."

In the case of *Seventh St. Gar. Co.* v. *Mercer*, 150 Va. 269, 142 S. E. 350, 351, Justice Campbell, delivering the opinion, quoted from the case of *Hoge* v. *Turner*, 96 Va. 624, 629, 32 S. E. 291, as follows: "The purpose of the legislature in enacting the statute, as the title of the original act passed March 28, 1839, shows, was to prevent persons carrying on business under false or fictitious names and firms. The object was to prevent fraud; to compel any person transacting business as a trader to disclose the name of the real owner of the business, if any other there be; to prevent any shifting or evasion of ownership and liability for debts in case of controversy; and to preclude the assertion of secret claims of ownership against creditors of him who has conducted the business, possessed the property, and appeared to be its owner.

"The language of the statute is plain, explicit and imperative. It leaves no room for exception or qualification. If any person, as is alleged in this case, transact business as a trader in his own name with the addition of the word 'agent,' or in his own name without such addition, and fail to comply with the provisions of the statute, it makes all the property, stock and choses in action acquired· or used in such business absolutely liable for his debts, whether contracted in the particular business or not, and without regard to knowledge by the creditor of the principal, if principal there be. Knowledge, or want of knowledge, plays no part ·in the application of the statute. That is an immaterial matter. The only question is whether the person was doing business as a trader within the meaning of the statute, and has complied or· failed to comply with its positive requirements."

See also the following cases: *Edmunds* v. *Hobbie Piano Co.*, 97 Va. 588, 34 S. E. 472; *Partlow* v. *Lickliter*, 100 Va. 631, 42 S. E. 671; *Nusbaum* v. *City Bank & Trust Co.*, 132

Va. 54, 110 S. E. 363; *Boice* v. *Finance & Guaranty Corp.*, 127 Va. 563, 102 S. E. 591, 10 A. L. R. 654.

■ The statute is patently applicable to the case in judgment. Under the deed of assignment the trustee therein took title to the automobiles in question.

The cases of *Capitol Motor Corp.* v. *Harry M. Lasker, Inc.*, 138 Va. 630, 123 S. E. 376, is typical of a number of cases in which this court has held that a creditor under a deed of assignment is a lien creditor.

■ Thus when the bank recaptured the automobiles under a writ of seizure issued in the action in detinue the lien of the creditors in the deed of assignment had attached, the titles by virtue of the deed were in the trustee and the seizure by the bank was wrongful and illegal.

Before final judgment in the action in detinue the motor corporation was adjudicated a bankrupt and Spandorfer was elected trustee in bankruptcy. He was thereafter made a party defendant in the action as such trustee, and the court rightly held that the titles to the automobiles became vested in him.

The onus of the bank's contention is that when the motor corporation was adjudged a bankrupt the deed of assignment became void and of no effect and that the case stood then as if there had never been such a deed. This contention does not appear to be sustained by reason or authority.

■ The Bankruptcy Law of the United States has for its object, in part, the securing of possession of an insolvent's assets, the procuring of their equitable division among creditors and preventing and avoiding attempts of one creditor to obtain advantage over other creditors. Something that does not stand in the way of attaining this end is not in conflict with it and ought not to be held to offend it.

■ In R. C. L. vol. 3, page 298, section 123, it is said: "A general assignment for the benefit of creditors, made within four months from the filing of a petition in bankruptcy, is void as against the trustee in bankruptcy, so far as it interferes with his administering the property."

It would therefore appear that the condition of nullity depends upon whether or not the instrument interferes with the duties of the trustee of the bankrupt.

In Remington on Bankruptcy, vol. 1, page 976, section 1606, under the general heading, "General Assignment Not Per Se Illegal nor Void but Voidable Merely," it is said: "General assignments for the benefit of creditors are valid until bankruptcy intervenes; they are not per se illegal; they are voidable, not void."

. *In re Pierce,* Fed. Cas. No. 11,141, 3 N. B. R. 258, the court said: "Even where the assignment has been the sole foundation of the proceedings in bankruptcy, I have considered it not a void act, but an act voidable by the assignee in bankruptcy by a bill in equity filed for the purpose of avoiding it."

In *Reed* v. *McIntyre,* 98 U. S. 507, 513, 25 L. Ed. 171, it was said: "Even if it were conceded that the assignment to Combs was an act of bankruptcy upon the ground that it was made with the intent to prevent the property from coming to the assignee in bankruptcy, and from being distributed under the Bankrupt Act, it was not invalid, except with reference to proceedings under the bankrupt statute, to be instituted by the bankrupt, or by some creditor, for the purpose of bringing the bankrupt's effects into the bankruptcy court."

. And on page 511 of 98 U. S., 25 L. Ed. 171, it is said: "Our conclusion, therefore, is that the assignment to Combs could not, upon common law principles, be impeached simply because it had the effect to prevent the appellant, by means of the execution levy, from securing priority over all other creditors."

In Corpus Juris, vol. 7, page 169, section 272, is the following: "In cases not provided for by the Bankruptcy Act, the validity of an assignment or transfer of the debtor's property must be determined according to the law of the State; and accordingly, where the debtor has transferred his property under such circumstances that the transac-

tion is valid under the law of the State, and not avoidable as a preference under the Bankruptcy Act, the title of the transferee is not affected by the subsequent bankruptcy of the transferor."

It will be noted that the deed of assignment in the case in judgment contained no preference. It was for the benefit of all of the creditors of the motor corporation and so by its terms it is in harmony with the purpose of the Bankruptcy Law (see 11 U. S. C. A.). Here, the trustee in bankruptcy has no quarrel with the deed of assignment. He is content with it and its effect but proposes, as is his bounden duty, to administer the estate through the bankruptcy court. The cases and text law cited are authority for the position that bankruptcy does not have the effect to make void a deed of assignment executed within four months thereof, but only voidable as against the trustee in bankruptcy. If such trustee does not attack it as being against his interest it ought to be allowed to remain effective, particularly when to do so would prevent a creditor from obtaining a preference to which he was not entitled.

We affirm the judgment of the trial court.

*Affirmed.*