WOOD PRESERVING CORPORATION *v.* CONEY GROCERY CO. *et al.*

(Division A. June 15, 1936. Suggestion of Error Overruled Sept. 21, 1936.)

[168 So. 864. No. 32179.]

Flowers, Brown & Hester, of Jackson, Hugh V. Wall, of Brookhaven, and J. N. Ogden, of Magnolia, for appellant.

**Price & McLain,** of McComb, for appellees, Gulf Refining Company and 555 Service Station.

**Price, Price & Phillips,** of Magnolia, for appellee, Coney.

418

C. T. Gordon, of Liberty, for appellee, R. L. Wilson.

C. T. Gordon, of Liberty, **Price & McLain,** of McComb, and **Price, Price & Phillips,** of Magnolia,. for appellees.

Argued orally by **J. N. Flowers** and **Hugh V. Wall,** for appellant, and by **O. W. Phillips** and **C. T. Gordon,** for appellees.

**Smith, C. J.,** delivered the opinion of the court.

This is an appeal from a decree denying the appellant's claim to a lien on lumber of another attached by appellees. The appellees sued out attachments at law on lumber owned by the Mitchell Lumber & Tie Company, after which the property of that company was put, by the chancery court, the one below, in the hands of a receiver, and on petition therefor the attachment cases were removed to the chancery court, where the pleadings were reshaped by the filing of bills of com-

plaint by the appellees, setting up the debts due them by the Mitchell Lumber & Tie Company, and the levy of the attachments sued out by them against that company on the lumber. The receiver and the Mitchell Lumber & Tie Company were made defendants to the bills of complaint, and having failed to appear and plead, answer, or demur thereto, a decree pro confesso was rendered against them, followed by a final decree which directed the receiver to hold the property "subject to the further order of the court to satisfy said indebtedness and attachment lien, and further that the priority of this complainant's lien and the rights of other attaching creditors or lien holders is not adjudicated by this decree, but the same will be determined by further order of this court." By permission of the court the Wood Preserving Corporation intervened by petition alleging, in substance, that it had a lien on the lumber prior to the complainants' attachment liens, for the reason that when the attachments were levied it was in possession of the lumber under a pledge thereof for the security of a debt due it by the Mitchell Lumber & Tie Company. The allegations of this petition were denied by the appellees, and the case was heard by the court on evidence, resulting in decrees that the appellees' attachment liens were prior to that of the appellant and dismissing its petition of intervention.

The pertinent facts disclosed by the record are, in substance, as follows: In 1933 W. L. Mitchell was indebted to the Ayer & Lord Tie Company in an amount said to be in excess of fifty thousand dollars. Mitchell owned practically all of the stock of the Mitchell Lumber & Tie Company, and was its president and general manager. In order to collect this indebtedness, an agreement was entered into between the Ayer & Lord Tie Company and the Mitchell Lumber & Tie Company, which will hereafter be designated as the Mitchell Company, that the Mitchell Company would enter into the business of manufacturing and selling lumber, the busi-

ness to be financed by the Ayer & Lord Tie Company by it advancing to the Mitchell Company money sufficient to enable it to cut and manufacture the lumber, from the proceeds of which the Ayer & Lord Tie Company was to be reimbursed for the advancements made, and a small per cent. of the proceeds thereof was to be applied to the payment of the old indebtedness due it by Mitchell. The Mitchell Company would cut timber acquired by it, when, but not until, orders for lumber to be manufactured therefrom were approved by the Ayer & Lord Tie Company, and by the use of portable sawmills would manufacture it into lumber and stack it on ground adjacent to the mills; at intervals of two or three weeks a representative of the Ayer & Lord Tie Company would check the lumber and give the Mitchell Company a draft on the Ayer & Lord Tie Company, for an amount estimated to be sufficient to pay the then incurred expenses of manufacturing the lumber. To these drafts would be attached bills of sale to the Ayer & Lord Tie Company for the lumber against which the drafts were issued; but we will assume that these bills of sale were defective and did not of themselves vest the Ayer & Lord Tie Company with the title to the lumber. Thereafter the appellant, through its representatives, kept the lumber under its observation, but the Mitchell Company was not excluded from access thereto, and we will assume that the evidence does not disclose a sufficient change of the possession of the lumber to render the attempted pledge thereof complete, though Mitchell, who testified for the appellant, said: "As to the control and possession of it, I gave it to them." The lumber was insured against loss by fire, each policy stipulating that "loss, if any, under this policy is hereby made payable to the Ayer & Lord Tie Company . . . as their interest may appear." Under the agreement the Mitchell Company was not thereafter to deal with the lumber, except as follows: It would transport the lumber to a planing mill operated by it at Fernwood (the expense of which would be ad-

vanced by the Ayer & Lord Tie, Company), where the lumber would be again stacked, and after it had been planed would be shipped to the purchasers; invoices therefor would then be assigned by the Mitchell Company to the Ayer & Lord Tie Company, which would pay the Mitchell Company the difference between the advances received by it thereon from the Ayer & Lord Tie Company, plus a small per cent. of Mitchell's old debt to the Ayer & Lord Tie Company, which company would then collect from the purchasers for the lumber.

During the course of these operations the appellant, the Wood Preserving Corporation, succeeded to the rights and interest of the Ayer & Lord Tie Company under its agreement with the Mitchell Company, and thereafter the lumber was dealt with as it had been theretofore, except that the appellant was substituted for and discharged the obligations of the Ayer & Lord Tie Company under its agreement with the Mitchell Company. On August 27, 1934, because its "finances had come to a halt," the Mitchell Company agreed to deliver possession of the lumber then stacked on the yards at its Fernwood mill, together with the mill, to the appellant, which agreed to plane the lumber, deliver it to the purchasers who had contracted therefor, collect from them the money due therefor, and deal with this money as hereinbefore outlined. Pursuant to this agreement the Mitchell Company delivered the lumber and mill into the exclusive possession of an agent of the appellant, who, acting for the appellant, proceeded with the planing of the lumber and disposed of it, as provided in the agreement, until September 8, 1934, when the first of these attachments was levied, whereupon it suspended operations and, as hereinbefore stated, the business of the Mitchell Company, including the possession of the lumber, passed into the hands of a receiver. We will assume that the evidence disclosed that the possession of the lumber and of the planing mill, as hereinbefore stated, by the appellant was to be of temporary duration,

i. e., that thereafter if the Mitchell Company should be in position to resume business, possession thereof would be restored to it and the lumber would then be thereafter dealt with as it had been prior to August 27, 1934.

The appellant's claim is that when the attachments were levied the lumber was then in its possession under a pledge thereof to secure the advances made thereon by it to the Mitchell Company, and the money to be applied from the proceeds of the lumber to the payment of the old Ayer & Lord Tie Company debt. It is clear from the evidence that at the inception of the dealings hereinbefore set forth between the Mitchell Company and the Ayer & Lord Tie Company, to whose interest the appellant has succeeded, it was the intention of both parties that the Ayer & Lord Tie Company would be paid for its advances to the Mitchell Company out of the proceeds of the lumber which would be pledged to the Ayer & Lord Tie Company as security for the advances. We will assume that this pledge agreement, up to August 27, 1934, was defective in that there was no delivery of the possession of the lumber to the pledgee. The subsequent delivery thereof to the appellant, however, cured this defect, for when the first attachment here was levied, the appellant was in possession of the property pursuant to the pledge agreement. Jones on Pledges, section 39; 49 C. J. 912.

That the possession of the lumber and planing mill was to be returned to the Mitchell Company when it should thereafter be in position to resume business is of no consequence, for while the lumber was in the appellant's possession pursuant to the agreement that it should be its security for the advances made by it to the Mitchell Company, the pledge was complete for the time being, although it might thereafter again become incomplete by the redelivery of such possession to the Mitchell Company.

It is said by counsel for the appellee, that the court below so held, that this pledge agreement was by col-

lusion of the parties thereto for the purpose of enabling the Mitchell Company to place its property beyond the reach of its general creditors. There is nothing in the evidence warranting this charge. But counsel for the appellee also say that under section 3352, Code of 1930, the lumber must be held to have been the property of the Mitchell Company when the attachments were levied, and therefore the attachments became a prior lien thereon. Assuming for the purpose of the argument that the business transacted by the Mitchell Company was within the provisions of this statute, nevertheless it does not apply here, for it does not prevent such a person from selling or pledging property used and acquired by him in his business, and when a pledge thereof becomes complete by the delivery of the possession of the property to the pledgee the only right the pledgor's general creditors have therein is (in a proper proceeding therefor) to subject the interest of the pledgor remaining therein to the payment of the debts due them by the pledgor.

The court below should not have dismissed the appellant's claim to a prior lien on the lumber, but should have sustained it and thereafter proceeded with the receivership proceedings accordingly. The decrees of the court below will be reversed, and a decree will be rendered here adjudging the appellant's lien to be prior to that of each of the appellees, and the cause will be remanded for further proceedings not inconsistent with this opinion.

So ordered.