### In re HILL STORE CO., Inc.

#### No. 3515–C.

District Court, N. D. West Virginia.

Aug. 14, 1939.

Sperry & Snider and C. R. Snider, all of Clarksburg, W. Va., for creditor.

Linn Mapel Brannon, of Weston, W. Va., for trustee.

HARRY E. WATKINS, District Judge.

The Livingston Seed Company has filed its petition asking to reclaim from the trus-

tee certain seed sold to the bankrupt. The sole ground of reclamation alleged in the petition is that the bankrupt knowingly made false statements upon which petitioner relied in making sale, and that no part of the agreed purchase price has been paid. The trustee filed his answer denying the allegations of the petition, and after a hearing, the referee allowed reclamation. The trustee has asked that such order of the referee be reviewed.

In the fall of 1938 the bankrupt ordered a carload of seed from petitioner, to be shipped in January or February following. This seed was shipped from Columbus, O., on January 27, 1939, by petitioner, consigned to itself at Weston, W. Va., and invoiced to the bankrupt in the amount of $2,432.69, with instructions to the railroad agent at Weston to release the same to the bankrupt. On January 30 the bankrupt notified petitioner by letter that it could not unload the seed; that "things are in bad shape financial" and that "we would not unload seed and get you in bad". R. F. Knight, a representative of petitioner, then went to Weston, and on February 8 arranged with bankrupt to unload all the seed and to store it in bankrupt's place of business. Bankrupt was willing to take seed in the amount of $500.09 to fill current orders, and this amount of seed was separated from the balance of the carload, and a draft was drawn by petitioner upon the bankrupt in this amount. On February 15 bankrupt filed its voluntary petition in bankruptcy and was adjudicated a bankrupt the same day. The draft in the amount of $500.09 was dishonored on account of "filing of bankruptcy petition", according to bank statement attached to draft. No sales were made, and the entire carload of seed remained at the store until bankruptcy, and thereafter came into possession of the trustee.

The only false statement urged by petitioner is a statement purported to have been made by S. R. Hill, president and manager of the bankrupt at the time the seed was being stored, to the effect that the bankrupt had funds to purchase seed in the amount of $500 for which it could pay. No evidence was introduced as to any false statement inducing sale of the remainder of the seed. The referee has made no formal finding of fact as to any false statement. The evidence relating to the alleged false statement is very vague, especially as to the falsity of the alleged statement, and in my opinion does not sustain the charges.

But even though plaintiff had succeeded in proving the alleged false statement, it would still be necessary to dismiss the petition for reclamation, insofar as it applies to the $500.09 part of the seed, for another reason. Ch. 47, art. 8, sec. 1 of the W.Va.Code, known as the Traders Act, provides, in part, as follows: "If any person shall transact business as a trader on his own account and in addition to such business, shall act as factor, agent or in any other sales representative capacity, or if any person without transacting business on his own account shall act as such factor, agent or in any other representative capacity, either with or without the use of the terms 'and company' or 'and co.,' and shall fail to disclose the name of his principal or partner by a sign in letters easy to be read, placed conspicuously at the house or place of business wherein such business is transacted and also by a notice published once each week for two successive weeks in a newspaper printed in the town or county wherein the same is transacted, or if no such newspaper be printed therein, then in a newspaper of general circulation in such town or county; then all of the property, stock, and choses in action, acquired or used in such business shall, as to the creditors of such person, be liable for all of the debts of such person * * *".

Bankrupt did not give the notice required as to any of the seed. It conducted a general retail store and was subject to the provisions of this statute. Under this act the trustee in bankruptcy acquired the status as a lienor under sec. 70a of the Chandler Act, 11 U.S.C.A. § 110(a), as of the date of filing the petition in bankruptcy. His rights as such lienor are determined by the local law. Under this local statute the trustee in bankruptcy had title to the seed purchased by the bankrupt superior to that of the seller, notwithstanding the bankrupt's fraud inducing sale. Waltham Piano Co. v. Smith, 4 Cir., 37 F.2d 534, 537. In this latter case the Circuit Court of Appeals for the Fourth Circuit construed a similar Virginia act, and although false statements were admitted, denied reclamation. The court said: "We cannot believe that it was the purpose and intent of the Legislature to make any distinction in the operation of the statute between vendors and consignors who were

defrauded by a trader, and those who were merely unfortunate or imprudent".

■ Contrary to the allegations of its pleadings, petitioner now contends that there was never a sale of the remaining seed and that it has both title and right to possession. It says that the Traders Act is not applicable for the reason that the remaining seed was only stored with the bankrupt, with the understanding that as the bankrupt needed a part of the seed for customers, it would purchase from petitioner and thereafter sell on its own account to customers. In my opinion this contention is not sustained by the evidence. Petitioner's representative Knight, while denying that sales were to be made for petitioner's account, admits that the bankrupt could sell seed and his company would in turn draw a draft for seed needed. Any misunderstanding as to the arrangement under which the seed was stored is settled by letter from the petitioner to the bankrupt dated February 8, written in accordance with instructions received from Knight, after storage arrangements were completed. In that letter petitioner states: "Regarding the balance of seed in this car, it is our understanding that you are to store this for our account, storage being free and are to sell for our account for cash only, making a daily report to us as sales are made and are to remit with the report or we are to have the privilege of drawing upon you as reports are made. * * * In accordance with all of this understanding, we enclose herewith storage receipt and request that you sign the original and return it to us promptly so that our files may be complete on the transaction. * * *" The storage receipt was signed and returned by the bankrupt, thereby definitely settling the terms of the storage agreement. Under this arrangement the bankrupt became the agent of petitioner with full authority to make sales, and thereby such seed came within the provisions of the Traders Act.

■ The learned referee decided for petitioner on the ground that the storage contract did not give bankrupt authority to make sales until after it had purchased from petitioner, and then only to make sales on bankrupt's own account. Therein, I believe the referee was clearly in error. The referee discusses the facts and evidence in his opinion, but such opinion does not constitute findings of fact and conclusions of law. Interstate Circuit, Inc., v. United States, 304 U.S. 55, 56, 57, 58 S.Ct. 768, 82 L.Ed. 1146. See, also, opinion of Judge Woolsey of the Southern District of New York, in the case of Detective Comics, Inc., v. Bruns Publications, Inc. et als., 28 F.Supp. 399, decided April 7, 1939.

The order of the referee allowing reclamation should be reversed and the petition dismissed.