**SWETNAM v. EDMUND WRIGHT GINSBERG CORPORATION.**

No. 192.

Circuit Court of Appeals, Second Circuit.

Argued Feb. 9, 1942.

Decided May 5, 1942.

Edward C. Weinrib, of New York City (Shaine & Weinrib, of New York City, on the brief), for plaintiff-appellant.

Duane R. Dills, of New York City (Dills, Muecke, Schelker & Levinson and Florence G. Brodman, all of New York City, on the brief), for defendant-appellee.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This case involves an attempted pledge whereby the asserted pledgee seeks to comply with the traditional common-law requirements of possession and still leave the asserted pledgor with sufficient access to the property to allow processing. The issue is presented by a plenary suit brought by a bankruptcy trustee appointed by the District Court for the Western District of Virginia, in which he seeks to set aside transfers of accounts receivable and merchandise during the four months prior to bankruptcy. The principal defense offered is that the transfers were made pursuant to a valid pledge and are not preferences. The District Court upheld this defense with a considered opinion. 37 F.Supp. 546. We are constrained to disagree.

The bankrupt, the Deford Company, a West Virginia corporation engaged in tanning operations, entered into a factoring agreement in 1936 with defendant, Edmund Wright Ginsberg Corporation. Under this agreement defendant was to be the exclusive factor for Deford, in order to provide working capital. As security, the contract gave defendant a lien on all hides and leather, and provided that all accounts receivable arising from the shipment of pledged leather were to be assigned to defendant. In furtherance of the pledge agreement, provision was made for lease of the warehouses by defendant, for insurance in favor of defendant, for a custodian under the pledgee's control, for reports of various kinds, and for control over the persons to whom leather was sold and the methods of assignment of accounts.

During the period of the contract, advances from defendant to Deford amounted to something over $1,000,000. Yet the financial condition of Deford was at all times precarious, and defendant knew at least as early as October, 1937, that Deford was insolvent. At about that time defendant ceased advancing funds and processing soon stopped. Finished hides were still sold, however; and as late as April, 1938, negotiations concerning further advances were had between defendant and Deford. These fell through, and on July 20, 1938, Deford was adjudicated a bankrupt. The trustee seeks to recover $94,278.30, the adjusted amount of the accounts receivable assigned during the four months preceding the date of adjudication.

As the District Court remarked, the requirement that possession of pledged property must pass to the pledgee "is so well established in the law that it is not open to discussion." But, as the court also observed, "possession" is "not a self-expounding term." In a case such as this, where the parties clearly tried to come as close as possible to meeting the legal requirements of "possession," yet leave the pledgor free to operate its business, it is necessary to examine closely the actual course of activity.

We may put to one side the provisions of the contract and the supervision of sales by defendant. All this cannot be finally decisive, even though it may be indispensable as a first step, in establishing possession. None of it hits the real purpose of requiring possession—notice to third parties that property apparently owned by the debtor is subject to a security interest. See 51 Yale L. J. 431; Irving Trust Co. v. Commercial Factors Corp., 2 Cir., 68 F.2d 864, 866. The crucial question is how well defendant and Deford signified to the world what property was and what property was not pledged.

The first, and most important, element is the nature of signs indicating that property on the Deford grounds was pledged to defendant. The Deford plant occupied approximately fifteen acres of land at Luray, Virginia, with thirty or so buildings scattered over the tract. At the entrance was a small sign warning that the property was private and belonged to the Deford Company. Numerous large signs, visible for some distance, also stated that the property was the site of the Deford leather plant. Of the many buildings on the grounds, five were leased to defendant—the hide house, three ware-

houses, and the warehouse office. On these buildings, usually only at one spot, not the most conspicuous, small brass plates, 16″ by 4″, reading "Edmund Wright Ginsberg Corporation, Factor for The Deford Company," or "Edmund Wright Ginsberg Corporation, Factors," were, placed. In one instance this sign was so placed on a door that whenever the screen was closed the sign was virtually invisible. There was also evidence that cardboard signs stating "All leather in this warehouse is pledged to Edmund Wright Ginsberg Corporation" had been put up on warehouses. They were removed, however, when the brass plates were put up. Apparently there were also some signs inside the buildings, but at best they would not be too valuable as notices to third parties; and even they were not too conspicuously placed. All in all, the notices were placed obscurely, were frequently vaguely worded, and were generally offset by the more noticeable indications of ownership by Deford.

Not even the attempted possession, apart from notice, comported with the traditional common-law rules. One of Deford's employees was switched to defendant's pay roll and made custodian of the pledged hides. But except for making some notations in a small notebook, he continued his work as before. All other activity continued as formerly, except as to actual sales, which had to be approved by defendant. Even though the custodian was given a set of keys to the leased buildings, three other sets remained in Deford's hands; and although the custodian was supposed to unlock and lock the premises, it appears that he did so only when he was the first to arrive or the last to leave. There was also a small stamp, consisting of a circle around a cross, placed on each hide to indicate that the hide was pledged; but the stamp seems always to have been around the premises, and use of it appears to have differed only in that after the pledge arrangement every hide was stamped. Thus, the attempted legal shift of control was little more than a matter of lip service to the rules. Actually, business went on as before.

■ All the acts here recited are conceded by the parties in a well-presented case. The question becomes one of the legal consequences of these acts. There is no question but that pledge agreements which allow processing to continue are difficult to arrange. It is to avoid this difficulty that an act like the New York provision for notice of liens on merchandise, Personal Property Law, Consol.Laws c. 41, § 45, was passed. But no such provision exists in Virginia, and common-law rules must govern. Though there are no specific decisions in Virginia covering a pledge of the sort here,[1] there is no indication that Virginia courts would not follow the universal rule. As good a statement of the authorities as any will be found in In re Merz, 2 Cir., 37 F.2d 1, certiorari denied Degener v. Boyd, 281 U. S. 738, 50 S.Ct. 333, 74 L.Ed. 1152. We are content to rest on that case as stating the common-law rule, and as covering this situation. Here in net effect the lendor's possession was neither open nor exclusive. 2 Glenn, Fraudulent Conveyances and Preferences, Rev.Ed.1940, § 477.

■ Defendant seeks to rely on the Virginia Traders Act, set out in the margin,[2] with which it sought to comply. A careful search of the Virginia authorities reveals no instance in which that statute has been held to obviate the necessity for possession. The purpose of the statute is to hit agency and consignment arrangements and undisclosed partners or backers. Southern Dairies v. Cooper, 4 Cir., 35 F.2d 439; 16 Va.L.Rev. 311. In fact, the courts have been criticized for extending the statute to instances where chattel mortgages and conditional sales had been recorded. See, generally, notes in 27 Va.L.Rev. 962; 14 Va.L.Rev. 496. If the statute goes this far, it might be

---

[1] We follow Virginia, not New York, law, of course. Goetschius v. Brightman, 245 N.Y. 186, 156 N.E. 660; New York Trust Co. v. Island Oil & Transport Co., 2 Cir., 33 F.2d 104, 79 A.L.R. 1007.

[2] "If any person transact business as a trader * * * and fail to disclose the name of his principal or partner by a sign in letters easy to be read, placed conspicuously at the house wherein such business is transacted, and also by a notice published for two weeks in a newspaper (if any) printed in the city, town or county wherein the same is transacted; or if any person transact such business in his own name, without any such addition; all the property, stock, and choses in action acquired or used in such business shall, as to the creditors of any such person, be liable for the debts of such person." Va.Code 1936, § 5224.

4

argued that a pledgee both had to take possession and comply with the act. Compare Wood Preserving Corp. v. Coney Grocery Corp., 176 Miss. 406, 168 So. 864, where the court held otherwise under a similar statute, yet assumed for the sake of argument only that compliance with the statute would protect a "non-possessory pledge." Seaboard Citizens' Nat. Bank v. Spandorfer, 160 Va. 826, 170 S.E. 12, relied upon by defendant, only establishes affirmatively the applicability of the Traders Act to the situation there disclosed of a bank loaning money to an auto dealer who was to continue to sell cars; it does not establish the non-applicability of the law of pledge. Furthermore, in view of our discussion of the poor attempt at disclosure in this case, it seems unlikely that there was a sign "placed conspicuously at the house wherein such business [was] transacted."

Defendant also seeks to rely on disclosures of the factoring agreements in various credit agency reports. These substitutes for possession by pledgees have not been accorded legal recognition. And since the rule of possession does not rest on actual deception, but on the possibility of it, the fact that some of Deford's creditors might have been on notice is irrelevant.

 Finally, defendant argues that the assignments of accounts during the four months preceding bankruptcy relate back to the date of the agreement. This is clearly erroneous. In 1936, there was only an agreement to assign, and, as we have held, no valid lien upon the hides and leather. Hence until the accounts came into existence, no security could exist; and until actually assigned, the security interest did not exist. Okin v. Isaac Goldman Co., 2 Cir., 79 F.2d 317; In re Modell, 2 Cir., 71 F.2d 148. When the assignment was made, a preference was created. Under § 60, sub. b, Bankr.Act, 11 U.S.C.A. § 96, sub. b, this was voidable. Nor can the procedure followed be fairly assimilated to the taking of actual possession under an equitable pledge, for that never happened. Instead, Deford delivered possession to its vendees; and having thus created a new property in itself, by way of claim against the vendees, it assigned that to defendant. Thus fairly considered, there were two separate steps, not merely the one step of perfecting a heretofore imperfect pledge.

The judgment is reversed for the entry of judgment in favor of the plaintiff.